West India Oil Company (P. R.), para beneficio de Caribbean Atlantic Air Lines, Inc., peticionaria, *v.* Tribunal de Contribuciones de Puerto Rico, demandado.

Núm. 30.—*Sometido:* Febrero 5, 1945. *Resuelto:* Mayo 28, 1945.

*H. S. McConnell* y *Joaquín Lago Padín,* abogados de la peticionaria; *Hon. Procurador General Interino Jesús A. González, M. Velázquez Flores* y *Ramón Gandía Biscombe, Procuradores Generales Auxiliares,* abogados del interventor, Tesorero de Puerto Rico, querellado en el pleito principal.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

La Asamblea Legislativa de Puerto Rico concedió a la Caribbean Atlantic Air Lines, Inc., por un término de quince años, una exención del pago de contribuciones y arbitrios.[1] Durante algún tiempo después de concedida la exención, la compañía de transporte aéreo compró a la West India Oil Company la gasolina que su negocio requería, devolviendo el Tesorero a la vendedora el impuesto que ésta había pagado al introducir en Puerto Rico la gasolina vendida a la compañía de transporte aéreo. En 1942 el Tesorero publicó el Reglamento núm. 44 (Revisado), por el cual estableció el procedimiento para que el vendedor pudiese obtener el reembolso del impuesto correspondiente a la gasolina que hubiere vendido a la compañía exenta de su pago.

En el período comprendido entre mayo y diciembre de 1943 la West India Oil Company vendió a la compañía de

[1] Ley núm. 17 de 11 de abril de 1939((1) pág. 327).

transporte aéreo 77,500 galones de gasolina y, al presentar al Tesorero el informe requerido por el Reglamento núm. 44 para obtener el reembolso del arbitrio, el Tesorero dilató por algún tiempo el asunto y luego notificó a la vendedora que no podía devolver el impuesto a base de la ley que le concedía la exención. Manifestó, sin embargo, que estaba dispuesto a devolverlo bajo la Ley núm. 1 de 22 de junio de 1942 (Segunda Sesión Extraordinaria, pág. 3), que eximía de impuesto a la gasolina introducida en Puerto Rico y consumida en el exterior. A ese fin era preciso que el vendedor acreditase la cantidad de gasolina consumida en Puerto Rico y la consumida fuera de la Isla. Así lo hizo la vendedora, protestando que la presentación de ese informe no debía entenderse como una renuncia a la exención concedida a la compañía de transporte aéreo, a virtud de la cual reclamaba la devolución del arbitrio sobre la totalidad de la gasolina consumida por ella tanto dentro como fuera de la Isla.(²)

Del informe presentado al Tesorero resultó que de los 77,500 galones vendidos a la compañía de transporte aéreo, 72,601 habían sido consumidos fuera del país, y los restantes 4,899 galones en los talleres de la compañía en esta Isla. El Tesorero devolvió el impuesto sobre la gasolina consumida fuera de Puerto Rico, pero rehusó reembolsar la cantidad de $489.90, importe del arbitrio sobre la gasolina consumida en Puerto Rico. Basó su decisión en que la contribución sobre esa gasolina recaía sobre la West India Oil Company por el solo hecho de haberla introducido ella en Puerto Rico, y arguyó que si bien dicha contribución recaía económicamente sobre la consumidora, como ésta no había importado la gasolina directamente, no tenía derecho a re-

(²)La Ley núm. 1 de 22 de junio de 1942 ( (2) pág. 3) eximió del impuesto, a partir del 15 de junio de 1942, a todos los productos de petróleo distribuídos desde Puerto Rico para uso fuera de la Isla durante el presente estado de guerra y hasta noventa días después de cesar las hostilidades por parte de los Estados Unidos. Pero la exención concedida a la Caribbean Atlantic Air Lines, Inc., por la Ley núm. 17 de 1939 comprendía toda la gasolina consumida por ella tanto dentro como fuera del país por un período de quince años.

embolso alguno, pues la West India Oil Company, antes de venderla a la consumidora, ya había satisfecho la contribución que legalmente le incumbía pagar al introducir la gasolina en Puerto Rico.

Apeló la West India Oil Company para ante el Tribunal de Contribuciones,(3) y éste, por la autoridad del caso de *Alabama* v. *King & Boozer*, 314 U. S. 1, 86 L. Ed. 3 (1941), invocado por el Tesorero, sostuvo su decisión.

El caso de *Alabama* no es de aplicación al que nos ocupa. En uno y otro se trata de dos inmunidades de distinto origen y de diferente alcance. En el caso de *Alabama* se trata de la inmunidad recíproca que a virtud de un principio constitucional(4) gozan el Gobierno Federal y el de los Estados del pago de contribuciones impuestas por el otro. En el presente caso la inmunidad envuelta surge de una ley especial de la Asamblea Legislativa de cuyos términos aparece el motivo y alcance de la exención.

Examinemos los hechos y la doctrina del caso de *Alabama*. Un estatuto del Estado de Alabama imponía una contribución de dos por ciento sobre el precio bruto de materiales vendidos a los contratistas. Prescribía el estatuto que aunque la contribución se imponía al vendedor, a quien se le denominaba "el contribuyente," éste tenía la obligación de sumar el impuesto al precio de venta y cobrarlo todo del comprador. Una sección del estatuto excluía de la contribución las ventas sobre las' cuales el Estado no pudiese imponerla por virtud de la Constitución o leyes de los Es-

---

(3) La West India Oil Company radicó la querella para beneficio de la Caribbean Atlantic Air Lines, Inc., la cual se obligó a pagar a aquélla los $489.90 en caso de que el Tesorero no le reembolsara el arbitrio.

(4) El principio no ha sido expresamente consignado en la Constitución, pero necesariamente surge de los dos gobiernos, el Federal y el Estatal, que imperan dentro del mismo territorio. *McCulloch* v. *Maryland*, 4 Wheat. 316, 400, 436 (U. S. 1819); *The Collector* v. *Day*, 11 Wall. 113 (U. S. 1870). Este último fué revocado por el caso de *Graves* v. *N. Y. ex rel. O'Keefe*, 306 U.S. 466 (1939), en tanto en cuanto reconocía una implícita inmunidad constitucional contra el pago de contribución sobre ingresos sobre los salarios de los funcionarios o empleados del Gobierno Nacional o de los Estados Unidos o sus instrumentalidades.

tados Unidos. King & Boozer vendió materiales de construcción a una persona que tenía con el Gobierno Federal un contrato a base de "costo más una compensación fija." La venta fué hecha a nombre del contratista y éste en ningún momento actuó ni estuvo autorizado para actuar a nombre del Gobierno de los Estados Unidos. Los materiales comprados habían de usarse en la construcción de un campamento militar y el Gobierno se obligó con el contratista a reembolsarle el precio de los materiales, incluyendo cualquier contribución sobre ellos tan pronto fuesen puestos en el sitio donde se iba a construir el campamento. King & Boozer cobró del contratista el precio de los materiales, pero dejó de cobrar la contribución por entender que como los materiales eran para el uso del Gobierno Federal, estaban exentos de la contribución. En el pleito instado por King & Boozer para evitar el cobro de la contribución por los funcionarios del Estado, la Corte Suprema nacional resolvió: que el estatuto de Alabama imponía al contratista la obligación de pagar el arbitrio; que como la compra se había hecho a nombre del contratista, a quien ninguna exención le había concedido el Congreso, la carga legal de la contribución recaía sobre el contratista, y que aunque la carga económica de la contribución recaía sobre el Gobierno Federal, puesto que en última instancia reembolsaría al contratista el costo de los materiales y el impuesto, esa circunstancia no eximía del pago de la contribución, pues en tanto en cuanto el impuesto forma parte del costo de los materiales que habrían de usarse en la obra del Gobierno, ello es tan sólo un incidente normal de la existencia dentro de un mismo territorio de dos soberanías independientes, cada una con poder para imponer contribuciones.

Donde mejor puede apreciarse el principio aplicado en el caso de *Alabama* es en el de *Trinityfarm Co.* v. *Grosjean*, 291 U. S. 466 (1934). Allí se trataba de una contribución impuesta por el Estado de Luisiana sobre la gasolina intro-

ducida y consumida en el Estado. Un contratista que rea-lizaba obras para el Gobierno Federal introdujo en el Es-tado una gran cantidad de gasolina que necesitaba para ope-rar la maquinaria que usaba en la construcción de la obra. La gasolina fué comprada a nombre del contratista. La cuestión a determinar era si por el hecho de que la gasolina habría de consumirse en una obra del Gobierno Federal, es-taba exenta de la contribución toda vez que en definitiva el Gobierno Federal reembolsaría al contratista tanto el costo de la gasolina como el impuesto sobre ella. Manifestó la Corte Suprema de los Estados Unidos que el contratista admitía que la maquinaria, los tanques de depósito, las he-rramientas y otras propiedades suyas que se usaban en la ejecución de la obra estaban sujetos a contribución por el Estado de Luisiana; que todos dichos implementos estaban tan íntimamente relacionados con la obra como lo estaba la gasolina sobre la cual se imponía el arbitrio; que no hay medio de distinguir entre la planta así empleada y la gaso-lina usada para producir fuerza motriz; y que si el pago de la contribución impuesta por el Estado sobre la propie-dad del apelante en algo afectara al Gobierno Federal, ello a lo sumo da lugar a una carga que es indirecta y remota y no una que es necesaria, inmediata o directa. La reclama-ción del contratista fué desestimada por carecer de mé-ritos.(5)

Como antes hemos insinuado, surgiendo la exención del caso que nos ocupa de una ley de la Asamblea Legislativa de Puerto Rico, es a la luz de los términos de esa Ley que debemos buscar la intención legislativa para determinar el alcance de la exención. La intención surge diáfana de la

---

(5)Refiriéndose al cambio que se ha operado en la doctrina de inmunidad recíproca del pago de contribuciones, se ha dicho: ''. . . en vez de una doctrina de inmunidad recíproca del pago de contribuciones, se ha establecido una doctrina de contribución recíproca de las instrumentalidades de cada gobierno por parte de los Estados y del Gobierno Federal, . . .'' Hugh Evander Willis. *Tendencies in American Constitucional Law*, 4 U. of Toronto L. J. 338, 348. Véase también *Graves* v. *N. Y. ex rel. O'Keefe*, 306 U.S. 466 (1939).

sección 1 de la Ley núm. 17 de 11 de abril de 1939 (pág. 327):(⁶) Conforme se desprende de sus términos, el propósito legislativo fué proteger a la compañía de transporte aéreo prestándole cooperación a fin de asegurar el éxito de su empresa, para que de ese modo pudiese continuar dando servicio de transporte aéreo en esta Isla. No impuso como condición de la exención que la gasolina, para quedar libre del impuesto, tuviese que ser introducida directamente por ella. No cabe duda de que no pudo ser ésa su intención porque de imponer esa condición, estaría destruyendo con una mano lo que hacía con la otra, ya que el obligar a la compañía a importar directamente la gasolina, era exponerla al fracaso de su negocio, pues esto hubiera requerido la inversión de fuertes sumas de dinero para la construcción de tanques donde guardar la gasolina. Dado el volumen de su negocio, tal inversión no hubiera sido práctica para la compañía, como tampoco lo hubiera sido importar las grandes cantidades de gasolina que hubiera tenido que comprar para justificar el flete de barcos tanques para traer el producto a Puerto Rico. De aplicarse el principio establecido en el caso de *Alabama* v. *King & Boozer,* supra, tendríamos que ir contra la intención del legislador, la cual es precisamente evitar que la carga económica de la contribución recaiga sobre la compañía de transporte aéreo que se ha propuesto proteger.

---

(⁶)La sección 1 de la Ley núm. 17 prescribe:

"El desenvolvimiento de los negocios y el progreso de los pueblos, requieren las vías de comunicaciones más rápidas. Los gobiernos de todos los países prestan su cooperación más decidida al desarrollo de la aviación, y uno de los medios para el progreso de la aviación consiste en la costumbre del público a viajar por la vía aérea. Establecer esta clase de negocios en esta Isla, es correr una aventura y arriesgarse a perder dinero. Por la Ley número 196, aprobada por esta Asamblea Legislativa en mayo 15 de 1938, se eximió de pagar contribuciones a la Corporación Aerovías Nacionales, Puerto Rico, Inc., y dicha corporación y la Powelson Air Line, hoy Caribbean Atlantic Air Lines, Inc., han venido transportando pasajeros, la primera desde San Juan, Ponce y Mayagüez, y vice versa, y la segunda desde Ponce a San Juan, y vice versa, sin que estas líneas puedan ir a otros pueblos por falta de sitios apropiados para aterrizar."

La contención del Tesorero, basada principalmente en la decisión del caso de *Alabama* v. *King & Boozer,* supra, al efecto de que él carecía de facultades para promulgar el reglamento a que hemos hecho referencia, no tiene méritos. En el caso de *Pyramid Products, Inc.* v. *Buscaglia, Tes.,* 64 D. P.R. 828, sostuvimos la validez de un reglamento—sustancialmente igual al núm. 44 revisado—aprobado por el Tesorero bajo la autoridad de la sección 39 de la Ley de Rentas Internas de Puerto Rico (Ley núm. 85 de 20 de agosto de 1925 (pág. 585), según fué enmendada por la Ley núm. 83 de 6 de mayo de 1931 (pág. 505) y de la Ley aprobada el 12 de febrero de 1904 (pág. 167), por el cual se estableció el procedimiento para la devolución de arbitrios pagados al introducir la gasolina en Puerto Rico que luego era exportada para Santo Domingo sin ser objeto de transacción alguna en esta Isla.

*Procede por lo expuesto anular la decisión recurrida dictada por el Tribunal de Contribuciones, y devolver el caso para que dicte otra decisión declarando con lugar la querella.*