Esso Standard Oil S.A. Ltd. etc., demandantes y recurrentes, *v.* Autoridad de los Puertos de Puerto Rico, demandada y recurrida; Caribbean Atlantic Airlines, Inc., interventora y recurrente.

*Números:* R-66-206, *Resueltos:* 26 de febrero de 1968
R-66-210

774

*James R. Beverly, R. Rodríguez Lebrón* y *J. López Baralt,* abogados de las recurrentes; *Francisco L. Acevedo Nogueras, Ramón Cancio, Lino J. Saldaña* y *América Lameiro Rivera,* abogados de la recurrida; *Wilson F. Colberg,* abogado de la interventora y recurrente.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

El Juez Asociado Señor Ramírez Bages emitió la opinión del Tribunal.

La recurrente sostiene que el derecho de 2 centavos por cada galón o fracción de galón de productos combustibles suplidos en los aeropuertos de Puerto Rico para uso y consumo de vehículos de transportación aérea que la Asamblea Legislativa autorizó a la recurrida Autoridad de los Puertos a cobrar es en efecto, una contribución y, por lo tanto, la delegación a la recurrida para imponerla y cobrarla es inconstitucional y, además, que el cobrar esa contribución a la recurrente cuando ésta suple tales productos a la interventora resulta en una imposición y cobro de contribución a esta última situación que no puede crearse ya que la inter-

ventora ha sido exenta del pago de contribuciones y arbitrios y que bajo el contrato vigente entre la recurrente y la recurrida se convino que tal derecho no se cobraría cuando el combustible se suple a empresas aéreas exentas de contribuciones. No tiene razón. Enseguida explicamos por qué.

La controversia en este caso surge con motivo de la aprobación de la Ley Núm. 82 de 26 de junio de 1959 (13 L.P.R.A. sec. 4030n, pág. 497), los Arts. 1 y 2 de la cual disponen que:

"Artículo 1.—Por la presente se suspende la imposición y cobro *de la contribución* que impone el art. 30(a) de la Ley Núm. 2 aprobada en 20 de enero de 1956, según enmendada, conocida por Ley de Impuestos sobre Artículos de Uso y Consumo de Puerto Rico, en lo que se refiere a gasolina de aviación, a todo producto combustible para uso o consumo en la propulsión de vehículos de transportación aérea, y a toda mezcla de gasolina con cualquier producto combustible para uso o consumo en la propulsión de vehículos de transportación aérea, destinado a consumirse en viajes por aire entre Puerto Rico y otros lugares, o en viajes por aire dentro de los límites territoriales de Puerto Rico, *siempre que la Autoridad de los Puertos imponga un derecho* de dos centavos por cada galón o fracción de galón sobre dichos productos *en lugar de dicha contribución y lo cobre a los suplidores del mismo* que operen en los aeropuertos de Puerto Rico.

El término 'suplidor' significa para los efectos de esta Ley cualquier persona natural o jurídica que se dedique al negocio de suplir los arriba mencionados productos, como también significará los consumidores de los referidos productos en el caso de que éstos los importen directamente.

Artículo 2.—La suspensión de la imposición y cobro del referido impuesto, tendrá lugar tan pronto el Director Ejecutivo de la Autoridad de los Puertos notifique por escrito al Secretario de Hacienda de Puerto Rico que la Autoridad de los Puertos ha impuesto y está cobrando el derecho mencionado en el artículo anterior; y dicha suspensión cesará desde el mismo día en que la Autoridad dejare de cobrar dicho derecho. Tan pronto se suspenda el referido impuesto quedará derogada la Resolución Conjunta Núm. 103, aprobada en 24 de junio de 1958, que asigna

$300,000 con carácter autorrenovable [*sic*] a la Autoridad de los Puertos en los años fiscales desde el 1959–60 hasta el 1968–69, y $65,000 en el año fiscal 1969–70, para promover y desarrollar las facilidades aeronáuticas en Puerto Rico e islas adyacentes." (Énfasis suplido.)

El Art. 4 de dicha ley provee que:

"Artículo 4.—El Gobierno Estatal se compromete por la presente y acuerda con cualquier persona, firma, corporación o agencia federal o estatal, que suscriba o adquiera bonos de la Autoridad de los Puertos para costear en todo o en parte cualquier empresa, o parte de la misma, a no limitar, ni restringir, los derechos o poderes que por esta Ley se confieren a la Autoridad, hasta tanto dichos bonos, de cualquier fecha que sean, conjuntamente con los intereses sobre los mismos, queden totalmente solventados y retirados."

De acuerdo con la Ley Núm. 17 de 11 de abril de 1939 prorrogada por la Ley Núm. 20 de 23 de abril de 1954, la interventora gozó hasta el 10 de junio de 1964 de *exención* "*del pago de toda contribución insular, local y municipal de cualquier nombre y naturaleza que ésta sea,* sobre sus propiedades; muebles o inmuebles que actualmente posea o adquiera en lo sucesivo, incluyendo los impuestos y arbitrios, con excepción de la contribución sobre ingresos y la cuota que le corresponde pagar bajo la ley de indemnización a obreros por accidentes del trabajo." (Énfasis nuestro.)

El Art. 8 del Contrato y Arrendamiento del Sistema de Entrega Subterránea de Combustible celebrado entre la recurrente y la recurrida en 17 de agosto de 1960 dispone que aquélla le pagará a ésta el referido derecho sobre todo el combustible para aeroplanos que entregue a sus clientes en los aeropuertos excepto que no se cobrará en el caso de combustible entregado para aviones de líneas aéreas exentas del pago de la contribución bajo el Art. 30(b) de la Ley Núm. 2 aprobada en enero 20, 1956 según ha sido enmendada o bajo cualquier otro estatuto.

Del texto de dicha ley así como del informe de la Co-
misión de Hacienda del Senado de Puerto Rico sobre el
Proyecto de la Cámara 663 que se convirtió en la referida
Ley Núm. 82 de 1959, surge el propósito que animó la apro-
bación de dicha Ley. Dicho informe reza que:

"Este proyecto suspende la imposición y cobro de la *contri-
bución* sobre combustible de aviación y deroga la Resolución
Conjunta Núm. 103 aprobada en 24 de junio de 1958 y al mismo
tiempo faculta a la Autoridad de los Puertos a imponer *un
derecho* de dos centavos por galón o fracción de galón de com-
bustible para uso o consumo en viajes por aire dentro de los
límites territoriales de Puerto Rico.

. . . . . . . . .

La Autoridad de los Puertos tiene necesidad de hacer mejo-
ras y ampliaciones en el Aeropuerto Internacional y para ello
necesita emitir bonos de renta. Hasta ahora, según se informa
a la Comisión, no ha habido mercado disponible para esos bonos
de la Autoridad de los Puertos, en razón a que los únicos fon-
dos con que contaría la Autoridad para hacerle frente a esos
bonos sería la asignación autorrenovable [*sic*] aprobada por la
Resolución Conjunta Núm. 103, la cual podía ser derogada por
la Asamblea Legislativa. Esta posibilidad como es natural, crea
cierto estado de inseguridad en los inversionistas. Para hacerle
frente a esto es que se presenta este Proyecto de Ley, dándole
poder a la Autoridad de los Puertos para imponer el *derecho*
ya expresado. La Autoridad, a base de esto, podría emitir bonos
que se pagarían con el impuesto de ese *derecho.*" *Diario de Se-
siones,* Vol. 12, tomo 3 (1959) a la pág. 1584. (Énfasis suplido.)

El Memorial Explicativo del Director Ejecutivo de la
recurrida, sobre el proyecto que luego se convirtió en la
referida Ley Núm. 82 informa en parte, que:

"El anteproyecto que estamos sometiendo modificaría la
legislación imponiendo el impuesto sobre la gasolina y derogaría
la asignación autorenovable para la Autoridad de los Puertos.
Bajo el *modus operandi* que proponemos, la Autoridad quedaría
autorizada para *imponer un derecho* a las empresas gasolineras.
El producto de ese derecho ingresaría en los fondos de la Auto-
ridad."

Cuando la recurrida procedió a cobrar el referido derecho a la recurrente, ésta acudió al Tribunal Superior en solicitud de Sentencia Declaratoria, alegando en síntesis que por virtud de las Leyes Núms. 17 de 1939, 135 de 1945 y 20 de 1954 Caribbean Atlantic Airlines, Inc., estaba *exenta* de toda *contribución* insular, local o municipal de cualquier clase y naturaleza extensiva esta exención a toda propiedad de carácter mueble o inmueble que haya adquirido o pueda adquirir, incluyendo contribuciones y arbitrios; que la recurrente había contratado con Caribbean Atlantic Airlines, Inc., para suplirle el combustible de aviación que ésta necesitara y que en dicho contrato se dispuso que todas las contribuciones, derecho o cargos, que se le impusieran a la demandante en conexión con la producción, fabricación, venta, entrega o uso de combustible de aviación cubierto por dicho contrato, se le adicionaría al precio convenido.

Que bajo la Ley de Impuestos sobre Artículos de Uso y Consumo de Puerto Rico, a las ventas de gasolina realizadas por la recurrente a la interventora no se le impuso el arbitrio resultante de dicha ley, como consecuencia de las leyes de exención mencionadas y que bajo la Ley Núm. 82 de 1959 tampoco procede el cobro de ese derecho ya que dicho derecho no es otra cosa que un arbitrio sustitutivo del provisto en el Art. 30 (a) de la Ley Núm. 2 de 20 de enero de 1956 y por virtud de la exención contributiva concedida a Caribbean Atlantic Airlines, Inc., no viene obligada a pagar tal derecho; que el término "suplidor" de dicha Ley Núm. 82 tiene que referirse a/o incluir a un encargado del cobro del derecho, toda vez que quien debe pagar ese derecho es la persona o entidad que usa o consume el combustible; que existe un contrato entre la Autoridad de los Puertos y la demandante ESSO en que se convino que el derecho de 2 centavos por galón no aplicaría a ventas hechas a entidades exentas.

A estas alegaciones la recurrida Autoridad de los Puertos contestó alegando en síntesis que el arbitrio que fue suspen-

dido por la Ley Núm. 82 no tiene semejanza jurídica, por ser de naturaleza distinta, con el derecho de 2 centavos autorizado por dicha Ley Núm. 82; que la disposición contractual entre ESSO y la Autoridad de los Puertos no exime a la demandante ESSO del pago del referido derecho y que si así fuera, dicha disposición contractual es nula por estar en abierto conflicto con la Ley Núm. 82 ya que esta ley no concede, ni faculta a la recurrida a conceder exención alguna.

Que el derecho que impone la Ley Núm. 82 no es un arbitrio, impuesto o contribución, sino un cargo a los suplidores de dichos productos, por el privilegio de suplirlos en los aeropuertos de la recurrida, y/o por el uso de la propiedad, las facilidades y los servicios que para suplirlos mantiene la recurrida en los aeropuertos de Puerto Rico: que por no tratarse de un arbitrio, impuesto o contribución la Caribbean Atlantic Airlines, Inc., no está exenta del pago del mencionado derecho y que de resolverse que dicho derecho es en verdad un arbitrio, la recurrente ESSO no estaría relevada de pagarlo a virtud de dichas leyes, por la gasolina y combustible que supla a la Caribbean Atlantic Airlines, Inc., porque el derecho o el supuesto arbitrio se impone y se cobra a la recurrente como suplidora; que la exención contributiva concedida a la Caribbean Atlantic Airlines, Inc., no tiene relación de clase alguna con el derecho impuesto a la recurrente por virtud de la Ley Núm. 82.

La Caribbean Atlantic Airlines, Inc., pidió permiso para intervenir en el pleito y su contención es a los efectos de que el derecho de 2 centavos que impone la Ley Núm. 82 es un impuesto, que solamente puede legalmente imponerlo la Legislatura del Estado Libre Asociado de Puerto Rico quien ha pretendido, ilegal e inconstitucionalmente delegar tal poder; que además de que tal delegación es impropia, ilegal e inconstitucional, fue hecha sin la prescripción de pautas y/o normas adecuadas y sin cumplir con los requisitos de uniformidad.

Más adelante las partes ESSO y la Autoridad de los Puertos pidieron al Tribunal Superior de San Juan que dictara sentencia sumaria ya que entre ellos no había controversia real sobre ningún hecho material y sólo quedaba por resolver la cuestión de derecho. Reglas 36.1 y 36.3 de las de Procedimiento Civil.

El tribunal de instancia concluyó que:

"La Ley Núm. 82 caracteriza la imposición como un 'derecho', distinguiéndolo expresamente de la contribución que iba a sustituir. Aunque esta caracterización legislativa no es concluyente, la misma merece gran peso. Véase *P.R. Telephone Co. v. Tribunal de Contribuciones,* 68 D.P.R. 154, 157–8 (1948). Además, ya hemos visto que en realidad de verdad la Asamblea Legislativa tuvo el propósito inequívoco *de autorizar la imposición de un derecho,* porque ésta era la única manera de proveer un medio sustitutivo de ingresos propios a la recurrida que no dependiera del poder contributivo del Estado en que se basaba la asignación autorenovable que quedó derogada por disposición del Artículo 2 de la propia Ley Núm. 82. Finalmente, es obvio *que esta ley hubiera sido del todo innecesaria si no se hubiera tenido la intención de sustituir el derecho por el arbitrio con pleno conocimiento de la distinción entre uno y otro y* de las consecuencias legales que ello conllevaba.

. . . . . . . .

Aunque literalmente el derecho se impone sobre la gasolina y el combustible y se cobra a los suplidores de tales productos que operen en los aeropuertos, resulta por demás claro que se impone—porque sólo entonces surge la obligación de pagarlo—sobre la gasolina y el combustible de aviación suplidos en los aeropuertos. El hecho de suplir el combustible en uno de los aeropuertos—o sea, el acto específico de suplirlo, unido a que se supla en ese sitio en particular por un suplidor que ahí opere—constituye, por tanto, el evento sujeto a la imposición y cobro del derecho.

. . . . . . . .

El derecho que nos ocupa en el presente caso no se impone llana y lisamente por la introducción, venta, consumo, uso, traspaso o adquisición de gasolina o combustible en cualquier sitio

que ocurra en Puerto Rico. Se impone, repetimos, por suplir la gasolina y el combustible en un sitio específico como lo son los aeropuertos. Para suplir ahí dichos productos—y, más concretamente a los hechos del presente caso, en el Aeropuerto Internacional de Isla Verde—es preciso hacer uso de la propiedad, las facilidades y los servicios de la Autoridad demandada, que también utilizan las líneas aéreas como la interventora para abastecerse de gasolina y combustible y para sus operaciones de vuelo, hasta en y desde Puerto Rico.

El carácter jurídico del derecho envuelto en este pleito es pues idéntico a los derechos de muellaje cuya validez en ejercicio del derecho de propiedad de los Estados y sus subdivisiones políticas o instrumentalidades públicas ha sido reconocida por el Tribunal Supremo de Estados Unidos desde hace más de tres cuartos de siglo frente a la contención de que realmente constituían un impuesto en violación del Artículo I, Sección 10, cláusula 3 de la constitución federal que provee que 'No State shall, without the consent of Congress, lay any Duty of Tonnage . . . .'

Uno de los primeros casos en que se estableció la indicada distinción entre el derecho de muellaje y el referido impuesto prohibido por la constitución es el *Keokuk N. L. Packet Co.* v. *Keokuk* (1877), (95 U.S. 80, 24 L. ed. 377, 379, 380)

. . . . . . . .

También es claro que el derecho o cargo puede imponerse a fin de financiar mejoras capitales para proveer tales facilidades y servicios, según ocurre con el derecho que aquí discutimos. Y aunque el cargo que se imponga debe ser razonable (cuestión que no está envuelta en este caso por no haber atacado la demandante ni la interventora la razonabilidad del derecho), el modo de la imposición—bien a base de tonelaje, galonaje u otra medida de cantidad—es enteramente irrelevante a su validez.

. . . . . . . .

La clara distinción que jurídicamente existe entre la imposición de una contribución y la imposición de un derecho de muellaje o de peaje, análogos al aquí envuelto, se hace todavía más patente de acuerdo con lo resuelto en el caso de *Sands* v. *Manistee River Improvement Co.* (1887), 123 U.S. 288, 31 L. ed. 149.

. . . . . . . .

Como la Asamblea Legislativa pudo fijar válidamente el derecho tal cual lo hizo al aprobar la Ley Núm. 82, la única cuestión que podría levantarse contra su validez es la que atañe a su razonabilidad. Aunque esta cuestión no está planteada en este caso, es conveniente examinarla brevemente al único fin de demostrar aún más que el derecho que nos ocupa lo es realmente y que su imposición está legalmente justificada.

. . . . . . . .

. . . [l]a ley que autorizó la imposición del derecho no concede exención alguna ni faculta a la demandada o al Administrador de Fomento Económico para que las conceda. En su consecuencia, dicha disposición contractual es nula por ser contraria a la ley que regula la imposición y cobro del derecho. Artículo 1207 del Código Civil, ed. 1930, 31 L.P.R.A., sec. 3372. Esto es igualmente aplicable a la Sección 9 del reglamento del Administrador de Fomento Económico en tanto en cuanto dicha sección pueda interpretarse que tiene el mismo alcance que el Artículo 8 del contrato suplementario." (Énfasis suplido.)

Apuntan la recurrente y la interventora ante nos que el tribunal de instancia incidió al dictaminar que (1) la verdadera intención legislativa fue autorizar la imposición de un derecho (*fee*) de naturaleza distinta a la contribución que iba a sustituir; (2) la imposición del "derecho" como tal está legalmente justificada; (3) la disposición contractual en el Art. 8 del contrato Suplementario de 17 de agosto de 1960, que disponía que el llamado "derecho" no se cobraría sobre combustible suplido a líneas aéreas exentas de contribuciones es nula; (4) que la exención contributiva de la interventora no incluía el derecho en cuestión; y (5) al no declarar la referida Ley Núm. 82 inconstitucional.

Arguye la interventora que (a) del texto de la referida Ley Núm. 82 y de los dos informes relacionados se deduce que la Asamblea Legislativa entendía que el llamado "derecho" por galón de gasolina de avión era real y específicamente un impuesto; que dicho alto cuerpo "equiparó los tér-

minos 'derecho', 'contribución', 'impuesto' y 'arbitrio', usándolos indistintamente al aprobar las leyes No. 72 de 1962 y la referida Ley No. 82 de 1959;" que así se reconoció en la Res. No. 364 de 29 de junio de 1960 del Administrador de Fomento Económico y en el Art. 8 del Contrato Suplementario celebrado por la recurrente y la recurrida, (b) "el nombre que se le dé a una contribución por el estatuto que la impone merece gran peso . . . *tal nombre no es definitivo* y el lenguaje específico del estatuto y el funcionamiento práctico de la contribución predomina sobre su nombre descriptivo" *P.R. Telephone Co.* v. *Tribunal de Contribuciones,* 68 D.P.R. 154 (1948); (c) que históricamente se han impuesto arbitrios sobre gasolina para sufragar el uso de la propiedad, facilidades y servicios (costo de las carreteras) y a nadie se le ha ocurrido llamar dicha exacción por otro nombre que el de "arbitrio" o "contribución"; (d) "si el mencionado 'derecho' es uno por facilidades y servicios prestados en los aeropuertos por la Autoridad de los Puertos, entonces el pagar por los mismos servicios y facilidades, otras tarifas, derecho de aterrizaje y rentas, se estaría pagando al menos de múltiples formas por los mismos servicios, lo cual sería si no lógico, claramente abusivo e ilegal." Este último argumento no se trajo a la consideración del tribunal de instancia ni se cuestionó ante el mismo la razonabilidad de la cuantía del "derecho".

Consideraremos primeramente el último apuntamiento pues de su solución dependen los primeros dos.

1. De entrada es necesario recordar los criterios de autolimitación que deben guiarnos al juzgar la validez constitucional de medidas legislativas. Las relacionamos en *E.L.A.* v. *Aguayo,* 80 D.P.R. 552, 595, 596 (1958). Además, hemos determinado que un estatuto es y se presume constitucional hasta que un tribunal competente declare lo contrario. *Pueblo* v. *Pérez Méndez,* 83 D.P.R. 539, 544 (1961). A un estatuto

debe dársele una interpretación razonable; y una aplicación literal del mismo que resulte en consecuencias absurdas, debe evitarse siempre que se pueda dar a la ley una interpretación razonable consistente con el propósito legislativo. *Pueblo* v. *Mantilla,* 71 D.P.R. 36 (1950); *Kovacs* v. *Cooper,* 336 U.S. 77 (1949); *Lynch* v. *Overholser,* 369 U.S. 705 (1962); *People* v. *Wabash R. Co.,* 62 N.E.2d 819 (Ill. 1945).

■ La Sec. 2 del Art. VI de la Constitución del Estado Libre Asociado dispone que el poder del Estado Libre Asociado de Puerto Rico para imponer y cobrar contribuciones y autorizar su imposición y cobro por los municipios se ejercerá según se disponga por la Asamblea Legislativa *y nunca será rendido o suspendido.* (Énfasis nuestro.) Siendo las exenciones contributivas derogaciones del poder soberano, no deben extenderse más allá de los términos expresos y exactos del estatuto que las otorga y toda duda debe resolverse en contra de la existencia de la exención, *Texas Co. (P.R.) Inc.* v. *Tribunal de Contribuciones,* 82 D.P.R. 134, 160 (1961). Cf. *American Nat. Bldg.* v. *City of Baltimore,* 224 A.2d 883 (Md. 1966), excepto cuando una interpretación en contrario se justifique con el fin de hacer efectivo el propósito legislativo.—*Textile Dye Works, Inc.* v. *Srio. de Hacienda,* 95 D.P.R. 708 (1968).

■ Por último es evidente que toda persona tiene derecho a cobrar un cargo o derecho por el uso que de su propiedad hace otra. La recurrida ha sido investida de esa facultad. (23 L.P.R.A. sec. 336(*l*).)

El Art. 19 del Código Civil (31 L.P.R.A. sec. 19) en vigor provee que:

*Razón, espíritu y motivos de la ley*

"El medio más eficaz y universal para descubrir el verdadero sentido de una ley cuando sus expresiones son dudosas, es considerar la razón y espíritu de ella, o la causa o motivos que indujeron al poder legislativo a dictarla."

■ En *Coll* v. *Picó*, 82 D.P.R. 27 (1960), concluimos, en efecto, que la ley debe interpretarse tomando en consideración los fines que persigue y en forma tal que la interpretación se ajuste al "fundamento racional o fin esencial de la ley" y a la política pública que la inspira.

■ De la propia ley se desprende que la Asamblea Legislativa se propuso autorizar la imposición de un derecho, porque ésta era la única forma de hacer autosuficiente a la Autoridad de los Puertos. Pero ese derecho no se impuso por la introducción, venta, uso o consumo de gasolina de aviación en Puerto Rico, sino por la gasolina suplida por los suplidores que operen en el aeropuertos. Es el hecho de suplir el combustible en uno de los aeropuertos de la Autoridad de los Puertos el suceso que genera la imposición y cobro del derecho. Este derecho no se impone por la venta de gasolina sino por el uso de las facilidades y los servicios que para suplir esa gasolina mantiene la Autoridad en su propiedad. Su naturaleza jurídica es pues distinta al impuesto o contribución que sustituyó. El derecho en cuestión es un cargo que por el uso de las facilidades que provee la Autoridad, se impone al amparo del Art. 6(*l*) de la Ley Núm. 125 de mayo 7 de 1942 (23 L.P.R.A. sec. 336(*l*)) y por especial autorización de la Asamblea Legislativa.

■ Entendemos que fue el propósito de la Asamblea Legislativa, proveer a la Autoridad de los Puertos recursos propios independientes del poder contributivo del Estado para el financiamiento de mejoras capitales. Con ese propósito autorizó a la recurrida la imposición de un *derecho así caracterizado* para distinguirlo de la contribución que suspendía. Y esa caracterización, merece gran peso.

■ Las contribuciones se imponen con el propósito exclusivo de generar rentas. En este caso el derecho no va dirigido a ese fin sino a producir ingresos a una instrumentalidad pública para el necesario y adecuado financiamiento de sus fines y propósitos.

Tampoco es ilegal. El derecho impuesto descansa en el volumen de gasolina y combustible suplido por la recurrente a la interventora en los aeropuertos de Puerto Rico. Ese suministro tiene una relación directa con el uso de las facilidades, y de la propiedad que para el tránsito aéreo mantiene la recurrida. Es evidente que el derecho a base del volumen de gasolina y combustible de aviación está relacionado con el uso de las facilidades y la propiedad de la Autoridad de los Puertos.

Resumiendo, de lo expuesto resulta evidente que el derecho que la Asamblea Legislativa autorizó a la recurrida a cobrar, es, en efecto, un derecho (*fee*) por servicio o uso de facilidades y no una contribución como aquella a la cual sustituyó, y por lo tanto su autorización no peca de inconstitucional o de ilegalidad, pues:

(1) se cobra por el uso de facilidades para suplir combustible a líneas aéreas en los aeropuertos y no por la introducción, venta, uso o consumo de dicho combustible; ni la recurrente ni la interventora han cuestionado esta conclusión del tribunal de instancia sino que simplemente arguyen que dicho "derecho" no responde ni equivale a un pago por servicio alguno rendido por la recurrida;

(2) el producto obtenido del cobro del referido derecho ingresa en los fondos de la recurrida para hacer posible su financiamiento; no constituye ingreso del Estado o Municipio.

(3) la Asamblea Legislativa puede autorizar a las corporaciones públicas a cobrar por sus servicios y por el uso de sus facilidades y así lo ha hecho en las ocasiones en que a su juicio lo ha considerado juicioso y necesario para la promoción o realización de una política o fin público.

2–3. El razonamiento precedente dispone además de los primeros dos apuntamientos de la interventora por virtud

de las cuales impugna (a) la conclusión de que la naturaleza del derecho en cuestión es distinta al de una contribución y (b) la legalidad de dicho derecho.

 4. Apunta la interventora, además, que el convenio de no cobrar el derecho sobre combustible suplido a la interventora como línea aérea exenta de contribuciones, insular, local y municipal de cualquier nombre y naturaleza que sea . . . "incluyendo todos los impuestos y arbitrios" no es nulo como concluyó el tribunal de instancia, porque la Ley Núm. 17 de 11 de abril de 1939 que proveyó tal exención "en los términos en que está redactada es una ley especial que tenía que ser respetada por la demandada o el Administrador de Fomento." Este argumento parte del supuesto de que el "derecho" en cuestión es en efecto una contribución o un arbitrio cuando previamente hemos demostrado que no lo es. Concluimos que el tribunal de instancia no incidió al determinar, en apoyo de esa conclusión, que "la ley que autorizó la imposición del derecho no concede exención alguna ni faculta a la demandada [aquí recurrida] o al Administrador de Fomento Económico para que la conceda. En su consecuencia, dicha disposición contractual es nula por ser contraria a la ley que regula la imposición y cobro del derecho. [Art. 1207 del Código Civil, ed. 1930 (31 L.P.R.A. sec. 3372)]. Esto es igualmente aplicable a la Sección 9 del Reglamento del Administrador de Fomento Económico en tanto en cuanto dicha sección pueda interpretarse que tiene el mismo alcance que el Art. 8 del Contrato Suplementario." *Infante* v. *Tribunal Examinador de Médicos*, 84 D.P.R. 308, 314 (1961); *Puerto Rico Ilustrado* v. *Buscaglia, Tes.*, 64 D.P.R. 914, 937 (1945).

 5. Sostiene la interventora que la exención contributiva incluía el "derecho" en cuestión y en apoyo de esta tesis cita a *West India Oil Co.* v. *Tribunal de Contribuciones*, 65 D.P.R. 76 (1945).

Lo difícil con esta contención es que la Ley Núm. 17 de abril 11 de 1939 prorrogada posteriormente por la Ley Núm. 135 de 1945 y la Ley Núm. 20 de 1954 se refiere a contribuciones e impuestos de carácter fiscal pero en modo alguno a derechos de la naturaleza del que aquí se discute. El Tribunal Superior lo interpretó así. "[R]esolver lo contrario conllevaría lógicamente el resultado absurdo de que dicha exención contributiva incluía también el pago de las tarifas, derechos, rentas y otros cargos fijados por la Autoridad demandada bajo el Art. 6 (*l*) de la ley de su creación por el uso de las facilidades o servicios suministrados por ella en los aeropuertos de Puerto Rico. Este resultado sería inevitable porque las tarifas, derechos, rentas y otros cargos que ahí se le autoriza fijar son jurídicamente de la misma naturaleza que el derecho de 2 centavos que se le autorizó imponer por la Ley Núm. 82 de 1959. Creemos que a tal resultado no se adhiere la propia demandante ni aun la interventora." Estamos de acuerdo con estas conclusiones.

■ Nos llama la atención la parte interventora hacia el hecho de que la Ley Núm. 17 de abril de 1939 (13 L.P.R.A. sec. 194) en su texto en inglés dice que la exención contributiva incluye "all imposts" y que el término "impost" aparece en el texto inglés de la Ley Núm. 82 dondequiera que el término "derecho" aparece en la versión castellana de la misma. Como la referida Ley Núm. 82 se originó en la Asamblea Legislativa en su texto castellano, esta versión es la que debe prevalecer. Art. 13 del Código Civil (31 L.P.R.A. sec. 13).

*En vista de lo expuesto se confirma la sentencia dictada por el Tribunal Superior en este caso.*