EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JUAN PÉREZ MÉNDEZ, acusado y apelante.

Número: 16787. Resuelto: 21 de septiembre de 1961.

*Santos P. Amadeo, Francisco Coll Moya y Antonio Quirós Méndez,* abogados del apelante.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

Una de las Salas de este Tribunal compuesta de tres Jueces, confirmó la sentencia dictada contra el apelante.

En un escrito titulado "Moción de Naturaleza Coram Nobis", dirigida al Tribunal en pleno, el apelante solicita se deje sin efecto la sentencia dictada por la Sala, alegando como fundamento, que dicha sentencia es nula e ineficaz, porque la Sala no tenía autoridad para resolver que la Ley núm. 220 de 15 de mayo de 1948 (Ley de la Bolita) es constitucional. Su tesis es, en resumen, que el Tribunal Supremo de Puerto Rico "en pleno es el forum exclusivo para determinar la constitucionalidad o inconstitucionalidad de un estatuto cuando éste es debidamente impugnado".

No tiene razón.   Cuando comenzó a regir nuestra Constitución en 1952, su Artículo V, Sección 4 disponía:

"El Tribunal Supremo funcionará, bajo reglas de su propia adopción, en pleno o dividido en salas.   Todas las decisiones del Tribunal Supremo se adoptarán por mayoría de sus jueces.   Ninguna ley se declarará inconstitucional a no ser por una mayoría del número total de los jueces de que esté compuesto el tribunal de acuerdo con esta Constitución o con la Ley."

Esta Sección 4 fue enmendada por el pueblo en las elecciones generales del 8 de noviembre de 1960.   La enmienda consistió en establecer el número mínimo de tres jueces para la constitución de una sala y en eliminar la disposición que exigía que todas las decisiones del Tribunal Supremo se adoptarán por mayoría de sus jueces.

Precisamente la disposición eliminada en 1960 era la que impedía que el Tribunal Supremo adoptara la decisión de una sala como su propia decisión, a menos desde luego, que tal decisión fuera adoptada por mayoría de los jueces del Tribunal.

Sin embargo la disposición original de que "Ninguna ley se declarará inconstitucional a no ser por una mayoría del número total de los jueces de que esté compuesto el tribunal . . ." quedó inalterada por la enmienda de 1960, leyendo en el presente, dicha Sección 4, como sigue:

Artículo V—Sección 4.

"El Tribunal Supremo funcionará, bajo reglas de su propia adopción, en pleno o dividido en salas compuestas de no menos de tres jueces. Ninguna ley se declarará inconstitucional a no ser por una mayoría del número total de los jueces de que esté compuesto el tribunal de acuerdo con esta Constitución o con la ley." [1]

Cuando se discutía en la Asamblea Constituyente el Artículo V, Sección 4 (entonces Sección 6) se intentó cambiar su lenguaje para que dispusiera que toda cuestión constitucional sería resuelta por una mayoría absoluta del Tribunal en pleno. Propuso el delegado señor Juan B. Soto:

"Para pedir, para presentar la siguiente enmienda, que donde dice en la línea 14, empezando al final de la 13, donde empieza el párrafo: 'Todas las decisiones del Tribunal se adoptarán por mayoría de sus miembros' se agregue 'y toda cuestión constitucional será resuelta por una mayoría absoluta del Tribunal en pleno'. Que se borren las palabras 'no se declarará anticonstitucional ninguna ley excepto por una mayoría absoluta del Tribunal en pleno'." (*Diario de Sesiones, Asamblea Constituyente*, pág. 214.)

Dicha enmienda fue ampliamente discutida. Su proponente argumentó que "Como está redactada la sección 6 (4 final) el Gobierno tiene una ventaja y es que si se adopta una ley que viola los derechos del ciudadano bastará con tres jueces para que digan que no lo viola, pero se necesitarán

---

[1] La Sección 3 del Artículo V de nuestra Constitución dispone que el Tribunal Supremo se compondrá de un juez presidente y cuatro jueces asociados y que el número de sus jueces sólo podrá ser variado por ley, a solicitud del propio Tribunal Supremo. Por la Ley núm. 2 de 4 de agosto de 1952, el número de jueces se varió a un juez presidente y seis jueces asociados y por la Ley núm. 7 de 6 de mayo de 1961 se varió a un juez presidente y ocho jueces asociados que es como está constituido actualmente el Tribunal Supremo. Esta ley contiene además disposiciones relacionadas con el funcionamiento del Tribunal y la forma de declarar inconstitucional una ley, exactamente iguales a las de la Sección 4, Artículo V de la Constitución. Véase además la Regla 3, Inciso (*b*) del Reglamento del Tribunal Supremo que entró en vigor en julio 1 de 1961.

cuatro para que diga que con esa disposición se violan los derechos del ciudadano." (Pág. 215.)

En contra de la enmienda argumentó el señor Gutiérrez Franqui. Entre otras cosas, dijo:

"Aquí lo que hemos querido dejar establecido es reconocer constitucionalmente la validez del principio de que todo estatuto se presume que es constitucional, y dejar establecido que para declararlo contrario a la constitución no es suficiente una mayoría del número que pueda estar actuando en un momento dado en el Tribunal, sino que tenga que ser la mayoría absoluta de todos los miembros . . ." (*Diario de Sesiones, Asamblea Constituyente*, pág. 215.)

La enmienda fue derrotada por la Asamblea. De haber sido aprobada, el acusado-apelante tendría razón en su planteamiento. En sus efectos legales lo que nos pide es que demos vigencia a una proposición rechazada por la Asamblea Constituyente.

En el Informe de la Comisión de lo Jurídico sometido a la Cámara el 2 de junio de 1960, sobre la R. Conc. de la C. 24, la cual sometía al electorado la enmienda a la Sección 4 del Art. V de la Constitución, se dice:

"Para terminar, nuestra Comisión entiende que es necesario señalar que el funcionamiento del Tribunal Supremo en Salas no es una solución nueva al problema de la congestión de casos en un Tribunal de Ultima Instancia ni en Puerto Rico ni en otras jurisdicciones y países. Así en Puerto Rico se contempló que el Tribunal Supremo funcionara dividido en Salas desde que la Constitución entró en vigor en el 1952. Esta forma de funcionar no ha podido resolver la congestión de casos en el Tribunal Supremo porque según apunta dicho Tribunal las decisiones de cada Sala deben ser adoptadas por mayoría del Tribunal en pleno. En adición a España y Francia, existe un número de países iberoamericanos en que el Tribunal Supremo bajo las disposiciones de la Constitución Nacional, puede funcionar dividido en Salas, contándose entre ellos Bolivia, Colombia, Costa Rica, Cuba, México y El Salvador. Igualmente se permite el funcionamiento del Tribunal Supremo dividido en Salas en los

Estados de Louisiana, Nebraska, Mississippi, Minnesota, Tennessee y Washington . . ."

En otra parte de dicho informe, el cual se sometió luego de celebrar vistas y oir sugestiones de miembros del foro, se dice:

" . . . el Tribunal Supremo tendrá amplia discreción para determinar, entre otras cosas, lo siguiente:
". . .
"(5) los casos en que, bien por razones de interés público, y por la importancia de las cuestiones jurídicas planteadas, o por cualesquiera otros motivos que el Tribunal estime pertinentes, el Tribunal crea que debe ver un caso constituido en pleno."

De suerte que es el Tribunal el que decidirá cuándo se va a considerar un caso por el Tribunal en pleno. La única limitación impuesta es la de que ninguna ley será declarada inconstitucional a no ser por una mayoría del número total de los jueces de que está compuesto el Tribunal.

Hay varios estados cuyas constituciones permiten el sistema de Salas.  (*Index Digest to State Constitutions*—p. 254; Columbia University Publication.)  Arkansas, Colorado, Nebraska, North Carolina y Virginia exigen que las cuestiones constitucionales serán consideradas y resueltas por el Tribunal en pleno.  En California, Kansas, Kentucky, Lousiana, Mississippi, Missouri, no hay disposición sobre el particular. Según se desprende del informe de la Comisión de lo Jurídico antes citado, los legisladores tenían conocimiento de las disposiciones constitucionales en dichos estados.  Sin embargo no adoptaron expresamente la norma de algunos de ellos de que toda cuestión constitucional será considerada y resuelta por el Tribunal en pleno.

En el caso *In re Opinion of the Justices*, 83 A.2d 213, 216, la Corte Suprema de Maine usa el siguiente lenguaje:

"Es deber de toda corte proteger y sostener la Constitución Federal y la Estatal.  Un solo juez de la Corte Suprema o de la Corte Superior o de cualquier otra corte estatutaria, tiene

el poder de pasar sobre la constitucionalidad de un estatuto si la cuestión está en controversia. Sin embargo, ha sido una vieja costumbre en este estado, que una corte de primera instancia (*nisi prius*), o un juez de cualquier corte con jurisdicción sobre la materia litigiosa, aceptara la presunción de que cualquier ley aprobada por la Legislatura es constitucional a menos que se haya determinado finalmente lo contrario por la Corte Suprema actuando como Tribunal de Derecho."

El caso de *Singer* v. *Ben How Realty*, 34 So.2d 553, (Florida), decide que a pesar de que la Constitución establece que si un caso envuelve la determinación de una cuestión Constitucional requerirá la consideración de dos divisiones y el Juez Presidente, si hay otras cuestiones no constitucionales también envueltas y la decisión de la corte inferior no es adversa a la constitucionalidad de la ley, podría actuar una división.

█ El acusado-apelante alega que un estatuto no es constitucional o inconstitucional hasta que el caso se resuelve en sus méritos. No está en lo cierto. Un estatuto es y se presume constitucional hasta que un tribunal competente declare lo contrario. 74 A.L.R.2d 347; 58 A.L.R.2d 1304.

El número de jueces necesarios para efectuar el trabajo de una corte, depende de las disposiciones constitucionales o estatutarias que establecen y regulan dicha corte. 14 Am. Jur. 282; *Courts* 57.

█ Alega también el apelante que las disposiciones constitucionales, estatutarias y reglamentarias que autorizan a la Sala a resolver dicho caso serían *ex post facto* porque el acusado y apelante perfeccionó su apelación ante este Tribunal en el 1959, y sólo el Tribunal en pleno podía resolver cuestiones constitucionales, ya que ni la Constitución, ni la legislación vigente ni el Reglamento de este Tribunal autorizaban a una Sala de tres jueces a resolver ninguna cuestión planteada en apelación.

No tiene razón el apelante: En el caso de *Duncan* v. *Missouri*, 152 U.S. 377, 14 S.Ct. 570; 38 L. ed. 485, se planteó

una cuestión similar. Se alegaba que la Constitución le garantizaba al apelante el derecho a que su apelación fuera vista por cinco jueces, como proveía la Constitución al momento de cometerse el delito y que se le negó ese derecho al resolverse el caso por una Sala de tres jueces, de acuerdo a una enmienda a la Constitución de Missouri. El Tribunal Supremo nacional dijo lo siguiente:

"Generalmente hablando, una ley *ex post facto* es aquella que considera delictivo y castiga un acto que al ser realizado no era punible; toda ley que agrava un delito o lo hace mayor de lo que era al momento de ser cometido; o que altera las normas de evidencia y exige menos prueba o prueba distinta a la exigida por la ley vigente a la fecha de la comisión del delito; o, en resumen, que en relación con el delito o sus consecuencias, altere la situación del acusado en forma desfavorable para él; *Cummings* v. *Missouri*, 4 Wall 277; *King* v. *Missouri*, 107 U.S. 221; pero el hecho de estatuir un nuevo procedimiento, y la abolición de tribunales y creación de otros nuevos que deja inalteradas las garantías sustanciales que la ley vigente concede al acusado, no se considera dentro de la prohibición constitucional."

Véanse, *State* v. *Jackson*, 105 Missouri 196; 11 *Am. Jur. Const. Law*, § 361, pág. 1189; *Beazell* v. *Ohio*, 269 U.S. 167; *Mallet* v. *N. C.*, 181 U.S. 589, 597; *Gibson* v. *Miss.*, 162 U.S. 565, 590; *Thompson* v. *State of Utah*, 42 L.ed. 1061, 1067, 170 U.S. 343, 352. En *Voorhees* v. *Cox*, 140 F.2d 132, 136, se decidió que cuando la ley vigente a la fecha en que se ordenó la revocación de la libertad bajo palabra de un reo requería la celebración de vista ante la Junta en pleno, una audiencia sobre la revocación celebrada ante un examinador designado por la Junta, bajo las disposiciones de una ley posterior, no constituye una violación de la protección contra leyes *ex post facto* de la Constitución.

*Por las razones expuestas se dictará una resolución declarando sin lugar la "Moción de Naturaleza de Coram Nobis".*