EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* CARMELO MORCELO MARTÍNEZ, acusado y apelante.

*Número:* M-75-44    *Resuelto:* 9 de septiembre de 1975

*Santos P. Amadeo, Obdulio Bauzá, Domingo Ríos Román* y *José Enrique Amadeo*, abogados del apelante; *Miriam Naveira de Rodón, Procuradora General*, y *Rolando Rodríguez Suro, Procurador General Auxiliar*, abogados de El Pueblo.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

El Ministerio Público radicó acusaciones en el año 1971 contra el peticionario ante el Tribunal Superior de Puerto Rico, Sala de San Juan, por los delitos de asesinato en primer grado e infracción a los Arts. 6 y 8 de la Ley de Armas, Ley Núm. 17 de 19 de enero de 1971, según enmendada, 25 L.P.R.A. secs. 416 y 418. El jurado halló culpable al peticionario de diversos delitos. No conforme con las sentencias que se le impusieron el 12 de mayo de 1972, el peticionario apeló de éstas ante este Tribunal.

A tenor con las disposiciones de la Ley Núm. 11 de 8 de agosto de 1974, se asignó la referida apelación para consideración en sus méritos por la División de Apelaciones del Tribunal Superior creada por la referida ley.

El peticionario cuestiona la legalidad de tal trámite, aduciendo que la Ley Núm. 11 de 8 de agosto de 1974 es inconstitucional por ser *ex post facto* bajo las disposiciones per-

tinentes de la Constitución de los Estados Unidos y la de Puerto Rico; que tiene derecho a que se resuelva su apelación por nueve jueces([1]) del Tribunal Supremo, cuyo nombramiento es vitalicio, y *no por tres jueces superiores*, cuyo nombramiento es por el término de doce años; y que la estructura apelativa diseñada por la Ley Núm. 11 de 8 de agosto de 1974 representa una violación al debido proceso de ley.

No tiene razón el peticionario. En Puerto Rico existe un sistema unificado de tribunales, habiéndose utilizado como precedentes directos para el actual Art. V de la Constitución del Estado Libre Asociado el Art. VI de la Constitución de Nueva Jersey y las Leyes de la Judicatura de Inglaterra de 1873 a 1875. 4 *Diario de Sesiones de la Convención Constituyente de Puerto Rico*, edición de 1961, 2610. El Art. VI de la Constitución de Nueva Jersey a su vez deriva fundamentalmente del sistema unificado inglés, cuya flexibilidad fue defendida vigorosamente por Roscoe Pound desde 1906. Pound, R., *The Causes of Popular Dissatisfaction with the Administration of Justice*, 40 Am. L. Rev. 729 (1906); 20 J. Am. Jud. Soc. 178 (1938). De ahí que sea conveniente examinar brevemente el tratamiento de las apelaciones dentro del sistema inglés.

Antes del Criminal Appeal Act 1907, no se conocía en el derecho inglés el concepto actual de apelación, aunque existían varios modos de intentar obtener la invalidación del fallo. Thompson and Wollaston, *Court of Appeal, Criminal Division*, London, 1969, pág. 105. No obstante, por más de un siglo, ha sido práctica usual la utilización de sesiones apelativas de un mismo tribunal, así como el movimiento intercurial de jueces. La anterior Corte de Apelaciones Criminales ("Court of Criminal Appeal") estaba integrada básicamente por los jueces de la División del Queen's Bench. Thompson and

---

([1]) La Ley Núm. 29 de 28 de mayo de 1975 redujo el número de jueces de este Tribunal a siete disponiendo que mientras no surgiese una vacante continuará constituido con ocho jueces.

Wollaston, *op. cit.*, 2–3; 111–112. Véanse las disposiciones de ley específicas, que son parte de la Criminal Appeal Act, 1966, a la pág. 225 de la obra citada. Véase también: Scott, *The Crown Court*, 1972, que describe la situación después de la reforma de 1971. ([2])

█ Según se expresa en la Exposición de Motivos de la Ley Núm. 11 de 8 de agosto de 1974, su propósito es contribuir a descongestionar los calendarios del Tribunal Supremo en el área criminal. Claramente no se estimó recomendable, al menos por el momento, la creación de un Tribunal Intermedio fijo. De hecho, este Tribunal ha planteado en varias ocasiones la necesidad de un mecanismo para cernir determinados asuntos resueltos por el Tribunal Superior. Véase, por ejemplo, nuestra Resolución de 11 de febrero de 1966. La referida ley no afecta, por supuesto, la jurisdicción de este Tribunal para revisar las decisiones de la División de Apelaciones del Tribunal Superior, por lo que su efecto práctico es proveer dos oportunidades para el reexamen de los fallos que se rindan en las causas criminales.

█ A la luz de todo lo anterior, resolvemos que no constituye una violación del debido proceso de ley el establecimiento de una División de Apelaciones del Tribunal Superior con los poderes de que ha sido investida. El término "apelación" es un concepto extraordinariamente amplio, que no condena a la Asamblea Legislativa de Puerto Rico a establecer un Tribunal Intermedio de Apelaciones de composición rígida como único medio de descongestionar los calendarios. Blom-Cooper and Drewry, *Final Appeal*, Oxford, 1972, págs. 44 y

---

([2]) En Estados Unidos se le está dando especial atención a este procedimiento. El Juez Presidente del Tribunal Supremo de los Estados Unidos ha sugerido de hecho que se utilicen como jueces del nuevo Tribunal Intermedio que él ha estado auspiciando a los propios jueces de otros tribunales federales, escogidos bajo una base rotativa. *The Third Branch*, Bulletin of the Federal Courts, Vol. 7 Núm. 6, junio, 1975; Burger, Warren E., *Reducing the Load on 'Nine Mortal Justices'*, *The New York Times*, August 14, 1975.

24

ss. En *Pueblo* v. *Pérez Méndez*, 83 D.P.R. 539 (1961), rechazamos un planteamiento similar en cuanto a la enmienda efectuada en 1960 a la Sec. 4 del Art. V de la Constitución, permitiendo decisiones por salas de este Tribunal en lugar del pleno. El hecho de que los jueces de la División de Apelaciones no cuenten con nombramientos vitalicios tampoco es ofensivo al concepto del debido proceso de ley, como tampoco desvirtúa ni anula, por analogía, las decisiones de los jueces del Tribunal Superior en las apelaciones originadas ante el Tribunal de Distrito. La duración del cargo de un magistrado presenta más bien problemas de política legislativa y buena administración judicial que de debido proceso de ley.

Respecto a la alegación del peticionario de que la citada Ley Núm. 11 de 8 de agosto de 1974 constituye una ley *ex post facto*, no procede su contención a la luz de *Duncan* v. *Missouri*, 152 U.S. 377, 382–383 (1893) y casos posteriores. Véase también: *Pueblo* v. *Pérez Méndez*, supra.