TEXTO COMPLETO DE LA SENTENCIA
Se apela una sentencia del Tribunal de Primera Instancia, Sala Superior de Bayamón (Hon. Misael Ramos Torres), que declaró con lugar una petición de hábeas corpus instada por catorce (14) convictos de delitos de asesinato y otros delitos graves del Código Penal y de la Ley de Armas, y ordenó que éstos permanecieran en la libre comunidad bajo supervisión electrónica.
Alega el Procurador General que:

“Erró el Tribunal de Primera Instancia al conceder el auto de hábeas corpus presentado por los convictos-peticionarios y ordenar su excarcelación por alegada violación a su debido proceso de ley, cuando éstos - como cuestión sustantiva - no son acreedores al privilegio de supervisión electrónica y dicho privilegio fue ilegalmente concedido mediante una actuación ultra vires de funcionarios de la Administración de Corrección. ’’

Concluimos que el Tribunal de Primera Instancia incurrió en el error alegado y procede como cuestión de derecho revocar la sentencia de hábeas corpus emitida. Veamos los fundamentos de nuestro dictamen.
I
Con el propósito de tener una relación completa del caso, procedemos a esbozar el historial penal de cada *267 uno de los convictos apelados, lo cual no está en controversia.
Efraín González Fuentes fue acusado por hechos cometidos el 18 de agosto de 1984 y declarado culpable y convicto por Asesinato, Tentativa de Asesinato, Robo e infracciones a los artículos 6 y 8 de la Ley de Armas (2 cargos por cada infracción). Le fue dictada sentencia de 144 años de prisión que comenzó a cumplir el 27 de agosto de 1985. El 15 de noviembre de 2002, se le concedió el privilegio de supervisión electrónica, tras haber extinguido 18 años de su sentencia en cárcel.
José M. Urbina Pérez, por hechos cometidos en febrero de 1986, fue encontrado culpable por Asesinato en Primer Grado e infracciones a los artículos 6 y 8 de la Ley de Armas. Así, fue sentenciado a 114 años de prisióñ', que comenzó a cumplir el 31 de marzo de 1986. Extinguió cerca de 17 años de prisión antes de ingresar el 4 de julio de 2002, al programa de supervisión electrónica.
Ricardo Matrero Vázquez, por hechos ocurridos el 11 de marzo de 1986, fue declarado culpable por Asesinato en Primer Grado. Recibió sentencia de 99 años de prisión que comenzó a cumplir el 11 de septiembre de 1986. Cumplió cerca de 14 años en prisión, antes de ser referido el 17 de noviembre de 2000, al programa de supervisión electrónica.
Benjamín Alers Rodríguez, por hechos cometidos el 2 de marzo de 1989, fue declarado culpable y convicto por Asesinato en Primer Grado y violación al Artículo 8 de la Ley de Armas. Así, fue sentenciado a 99 años de prisión el 21 de septiembre de 1990. Extinguió cerca de 12 años en prisión, antes de ser referido al programa de supervisión electrónica el 26 de noviembre de 2002.
Héctor L. Quiñones Andino, por eventos cometidos el 15 y 25 de abril de 1988, fue declarado culpable por •Asesinato en Primer Grado (5 cargos), Robo (3 cargos),- Asesinato en Segundo Grado e infracciones a los artículos 4, 6 (2 cargos) y 8 (3 cargos) de la Ley de Armas. Así, fue sentenciado a 206 años de prisión desde el 10 de agosto de 1989. Extinguió 15 años y 5 meses antes de ingresar al programa de supervisión electrónica el 20 de noviembre de 2001.
Melvin Suárez Fernández, por hechos cometidos el 1 de marzo de 1978, 17 de mayo y 14 de julio de 1981, fue declarado culpable por Asesinato en Primer Grado (2 cargos), Robo, Tentativa de Robo, Secuestro e infracciones a los artículos 4, 6 (2 cargos) y 8 de la Ley de Armas. Fue sentenciado a 99 años de prisión que comenzó a cumplir el 26 de marzo de 1990. Extinguió cerca de 13 años en prisión, antes de ser referido al programa de supervisión electrónica el 24 de noviembre de 2003.
Edgardo Rivera Borrero, por hechos cometidos el 4 y 17 de diciembre de 1986,- 26 de diciembre de 1991 y 7 de diciembre de 1992, fue declarado culpable por Asesinato en Primer Grado, infracciones a los artículos 4, 6 y 8 de la Ley de Armas, Agresión Agravada y violación al Artículo 404 de la Ley de Sustancias Controladas. Fue sentenciado a 102 años de prisión, que comenzó a cumplir el 3 de febrero de 1991 cuando fue arrestado. Extinguió cerca de 12 años en prisión antes de ser referido al programa de supervisión electrónica el 16 de septiembre de 2002.
Rafael Rivera Pérez, por hechos cometidos el 25 de abril de 1988, fue declarado culpable por Asesinato e infracciones a los Artículos 5, 6 y 8 de la Ley de Armas (2 cargos). Recibió sentencia de 99 años de prisión a cumplir desde el 21 de noviembre de 1988. Luego de extinguir cerca de 14 años de su sentencia en prisión fue referido el 22 de agosto de 2002, al programa de supervisión electrónica.
Arsenio Sánchez Rodríguez, por hechos cometidos el 23 de septiembre de 1985, fue declarado culpable por Asesinato en Primer Grado, Tentativa de Asesinato e infracciones a los artículos 6 y 8 de la Ley de Armas. Fue sentenciado a 124 años de prisión a partir del 23 de septiembre de 1987. Luego de cumplir cerca de 15 años de *268 su sentencia en prisión, fue referido al programa de supervisión electrónica el 20 de agosto de 2002.
Andrés Candelario Agosto, por eventos ocurridos el 6 de julio de 1984, fue declarado culpable por Asesinato en Primer Grado e infracciones a los artículos 6 y 8 de la Ley de Armas. Se dictó sentencia de 99 años de prisión a cumplir desde el 3 de septiembre de 1985. Tras haber cumplido 15 años de su sentencia en prisión, ingresó al programa de supervisión electrónica el 28 de junio de 2000.
Jorge L. De Jesús Rivera, por hechos cometidos el 21 de julio de 1986, se le declaró culpable por Asesinato, Secuestro Agravado, Tentativa de Asesinato, Secuestro Agravado (reclasificado a Secuestro) e infracción al Artículo 8 de la Ley de Almas (2 cargos). Así, fue sentenciado a 99 años de prisión a cumplir desde el 14 de julio de 1986. Extinguió cerca de 14 años de sentencia en prisión antes de ingresar al programa de supervisión electrónica el 26 de junio de 2000.
José R. Rivera Torres, por hechos cometidos el 18 de octubre de 1991, fue declarado culpable por Asesinato en Primer Grado e infracción al Artículo 8 de la Ley de Armas. Sentenciado a 99 años de prisión a cumplir desde el 21 de enero de 1995. El 18 de diciembre de 2002, fue referido al programa de supervisión electrónica, luego de haber cumplido cerca de 7 años en prisión.
Julio Alberto Medina Medina, por hechos ocurridos el 7 de septiembre de 1984, fue declarado culpable por Asesinato en Primer Grado, Robo e infracciones a los artículos 6 y 8 de la Ley de Armas. Se le dictó sentencia a 99 años de prisión a cumplir desde el 26 de marzo de 1995. Cumplió 16 años en prisión, antes de ser referido al programa de supervisión electrónica el 1 de agosto de 2001.
Carlos Delgado Rivera, por eventos cometidos el 12 de septiembre de 1985, fue declarado culpable y convicto por Asesinato en Primer Grado, Robo (2 cargos) e infracciones a los artículos 6 y 8 de la Ley de Armas (3 cargos en cada uno). Así, fue sentenciado a 139 años de prisión a cumplir desde el 15 de septiembre de 1985. Tras haber cumplido 17 años de prisión, ingresó al programa de supervisión electrónica el 16 de septiembre de 2002.
II
Los hechos procesales del presente litigio tuvieron su origen los días 6 y 7 de abril de 2005, cuando los convictos por delitos de asesinato y otros delitos graves, aquí apelados, fueron reingresados a la Institución Correccional de Bayamón 501. Al momento de ser reingresados, los convictos apelados se encontraban cumpliendo sus sentencias en la mayoría de los casos por delitos de asesinato en primer grado, Ley de Armas y otros delitos graves, bajo el Programa de Supervisión Electrónica y disfrutando libertad condicionada hacía varios años. Según alegaron los convictos, ninguno de ellos incumplió con las condiciones impuestas por el programa ni existía querella o investigación de clase alguna en su contra, durante el período que estuvieron bajo el privilegio de libertad.
El 20 de abril de 2005, los convictos apelados presentaron una petición de habeas corpus ante el Tribunal de Primera Instancia, Sala Superior de Bayamón. (Ap. III, págs. 3-9.) El tribunal de instancia señaló vista argumentativa en relación a la petición de habeas corpus para el 25 de abril de 2005. (Ap. IV, pág. 10.)
El 21 de abril de 2005, la Administración de Corrección celebró unas vistas en la cual los convictos apelados pudieron presentar sus argumentos al efecto de que eran acreedores bona fide del privilegio de supervisión electrónica, y estuvieron asistidos por los abogados que los representan en el presente proceso judicial. Ese día, los convictos apelados presentaron una segunda moción en auxilio de jurisdicción ante el foro de instancia, con el propósito de que se paralizaran las vistas pautadas para ese día a las 9:00am, para “evitar se sigan violentando los derechos constitucionales de los peticionarios”. (Ap. VI, págs. 12-15.)
*269 El 25 de abril de 2005, antes del comienzo de la vista señalada por el tribunal de instancia, el Estado presentó una moción oponiéndose a la expedición del auto de habeas corpus. (Ap. VII, págs. 16-34.) El 25 y 26 de abril de 2005, el tribunal de instancia celebró vista evidenciaría para ventilar la petición de habeas corpus de los convictos apelados. Celebrada la vista, el foro de instancia dictó en corte abierta la sentencia apelada, en la cual concedió la petición hecha por los convictos apelados, y ordenó la ejecución inmediata mediante sus excarcelaciones de la institución penal en que se encontraban.
Dicha orden de excarcelación fue oportunamente dejada sin efecto por el Tribunal de Apelaciones a solicitud del- Procurador General, al presentar esta apelación acompañada de una moción en auxilio de jurisdicción.
En la apelación, el Procurador General alega que incidió el Tribunal de Primera Instancia, al concluir que los convictos por varios delitos de asesinato, aquí apelados, tenían derecho al privilegio de supervisión electrónica.
Concluimos que el error fue cometido y procede en derecho y justicia, ser revocada la sentencia.
III
Expuestos los hechos pertinentes, procedemos a discutir la norma jurídica aplicable.
A
Reglamento de la Administración de Corrección
El deber ministerial de la Administración de Corrección respecto a la controversia presentada, surge de los reglamentos correspondientes a los procedimientos del Programa de Supervisión Electrónica, promulgados por dicha agencia gubernamental.
El Reglamento para Establecer el Procedimiento para el Programa de Supervisión Electrónica, Núm. 5065 de 28 de febrero de 1994, (en adelante, Reglamento Núm. 5065), se adoptó conforme a las disposiciones de la Ley Núm. 116 de 22 de julio de 1974, Ley Orgánica de la Administración de Corrección y la Ley Núm. 170 de 12 de agosto de 1988, conocida como Ley de Procedimiento Administrativo Uniforme (LPAU). El Artículo VI del Reglamento establece los criterios de elegibilidad para la concesión del beneficio de supervisión electrónica. Tal artículo no incluyó el asesinato, como uno de los delitos excluidos de tal privilegio.
Sin embargo, en 1995, la Asamblea Legislativa aprobó la Ley Núm. 49 de 26 de mayo de 1995, la cual enmendó la Ley Orgánica de la Administración de Corrección, a los fines de fá'cültár expresamente ál Administrador de Corrección a establecer y reglamentar programas de supervisión electróñica. En- dicha-, enmienda se dispuso específicamente las causas de exclusión del privilegio de supervisión electrónica y demás programas de desvío o tratamiento y rehabilitación establecidos por la Administración de Corrección. Véase, 1995 Leyes de Puerto Rico, pág. 278.
En la Exposición de Motivos, la Asamblea Legislativa expresó que entendía que era necesario establecer por ley unos criterios básicos para los programas de desvío o tratamiento y rehabilitación creados y operados por la Administración de Corrección. Al igual que para la libertad a prueba, la libertad bajo palabra y la pena de restricción domiciliaria, el legislador consideró como política pública los criterios excluyentes para este conjunto de programas, los cuales por su importancia ante la sociedad, deben ser establecidos mediante legislación al efecto. Véase, Leyes de Puerto Rico, 1995, pág. 281.
A tales fines, mediante la referida Ley Núm. 49, supra, la Asamblea Legislativa añadió el Artículo 10-A a la Ley Orgánica de la Administración de Corrección, supra, que excluye a determinadas personas de los *270 beneficios del Programa de Supervisión Electrónica:
No serán elegibles para participar en los programas de desvío o tratamiento y rehabilitación establecidos por la Administración, de conformidad con las facultades que le confiere esta ley, ni en el Programa de Hogares de Adaptación Social, las siguientes personas:

“a. Toda persona convicta que esté cumpliendo sentencia por los siguientes delitos:

(1) asesinato, violación, incesto, sodomía o actos lascivos o impúdicos cuando la víctima fuera menor de 14 años; [...]. ” (Énfasis suplido.)
A diferencia de lo establecido en el Reglamento Núm. 5065, en la Ley Núm. 49, supra, el legislador excluyó, con carácter de política pública, a los convictos por el delito de asesinato sin hacer distinción de grados, de participar del Programa de Supervisión Electrónica.
Posteriormente se aprobó por la Administración de Corrección el Reglamento para Establecer el Procedimiento para el Programa de Supervisión Electrónica, Reglamento Núm. 6041 (en adelante Reglamento Núm. 6041), efectivo el 26 de noviembre de 1999, conforme a las disposiciones del Artículo 4.5 y 10 de la Ley Orgánica de la Administración de Corrección, Ley Núm. 116, supra, de la Ley Núm. 170, supra, LPAU, 3 L.P. R.A. see. 2101 et seq.\ y de los poderes conferidos por el Plan de Reorganización Número 3 de 28 de octubre de 1993, por el cual se creó el Departamento de Corrección y Rehabilitación. El referido reglamento se aprobó con el propósito de establecer los procedimientos para el Programa de Supervisión Intensa por Medios Electrónicos.
Sobre los criterios de elegibilidad este Reglamento Núm. 6041, supra, del 1999, dispuso en su artículo VII:

“Estarán excluidos para ser considerados para este privilegio las personas que están cumpliendo por los siguientes delitos:

1. Asesinato “enprimer grado”.

2. Violación.

3. Incesto.

4. Sodomía.

5. Actos lascivos o impúdicos, cuando la víctima fuere menor de catorce (14) años [...]”. (Énfasis suplido.)
A diferencia de lo establecido en la Ley Núm. 49, supra, el nuevo Reglamento Núm. 6041, añadió la modalidad de primer grado al delito de asesinato. Tal actuación implica que sólo excluyó del beneficio de supervisión electrónica a los confinados cumpliendo sentencia por asesinato en primer grado, no así a los convictos por asesinato en segundo grado. Esta distinción no surgía del anterior Reglamento Núm. 5065, según enmendado por la Ley 49, supra, la cual no tipificaba distinción alguna en el grado del delito de asesinato.
No obstante, el 23 de abril de 2004, la Administración de Corrección aprobó el Reglamento Núm. 6797 de Enmienda al Reglamento para Establecer el Procedimiento para el Programa de Supervisión Electrónica, del 4 de mayo de 2004 (en adelante, Reglamento Núm. 6797). Mediante el mismo modificó el inciso (1) del Artículo VII del Reglamento Núm. 6041 para que leyera “asesinato” en lugar de “asesinato en primer gradoconforme la clara expresión de la Ley Núm. 49, supra. A partir de entonces, no se hizo distinción alguna en cuanto al grado en el delito de asesinato.
*271 B
Error administrativo
En nuestra jurisdicción se ha reconocido "[q]ue un error administrativo no crea un estado de derecho que obligue a la agencia ni impida su corrección". Magriz v. Empresas Nativas, 143 D.P.R. 63, 71 (1997); Del Rey v. J.A.C.L., 107 D.P.R. 348, 355-56 (1978). Una actuación administrativa de dudosa corrección jurídica no impide que se corrija y ello no constituye una violación a la igual protección de las leyes. Un reglamento de una agencia administrativa que es contrario a su ley habilitadora es ultra vires y, por ende, carece de autoridad jurídica para ser ejecutado. Véase, Perfect Cleaning Services, Inc. v. Corp. del Centro Cardiovascular de P.R. y del Caribe, opinión de 16 de agosto de 2004, 2004 J.T.S. 143, pág. 143; Infante v. Tribl. Examinador de Médicos, 84, D.P.R. 308, 316 (1961). Además, es principio general que ninguna parte adquiere derecho alguno de los errores de las agencias administrativas. En tales casos lo que se impone es su corrección. Mendoza Aldarondo v. Asociación de Empleados, 94 D.P.R. 564, 576 (1967).
C

Hábeas corpus

El auto de hábeas corpus está consagrado en la Sección 13 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico. Se trata de un recurso extraordinario de naturaleza civil, mediante el cual una persona que está encarcelada o ilegalmente privada de su libertad, solicita de la autoridad judicial competente que investigue las causas de su detención. 34 L.P.R.A. sec. 1741(a); Ramos Rosa v. Maldonado Vázquez, 123 D.P.R. 885, 889 (1989). Véase, además, Pueblo v. Marcano Parrilla, 152 D.P.R. 557, 566 (2000). Su propósito es esencialmente proteger los derechos fundamentales de los ciudadanos, al proveer un medio sumario mediante el cual el tribunal pueda determinar la legalidad de la detención de una persona. Otero Fernández v. Alguacil, 116 D.P.R. 733, 739 (1985); Santiago Meléndez v. Rodríguez Alguacil, 102 D.P.R. 71, 72 (1974).
Instada una petición de hábeas corpus, comienza ante el foro judicial “una encuesta”, para que el propio Estado investigue la validez de la privación de la hbertad del ciudadano a favor de quien se solicita. Ortiz v. Alcaide Penitenciaría Estatal, 131 D.P.R. 849, 861 (1992); Martínez Rivera v. Tribunal Superior, 101 D.P.R. 900, 902-903 (1974); Reynolds v. Jefe de Penitenciaría, 90 D.P.R. 373, 382 (1964). El objetivo de dicha investigación será examinar si se han seguido y observado los trámites y garantías que exige el debido proceso de ley, al ordenar la detención del peticionario del recurso. Otero Fernández v. Alguacil, 116 D.P.R. 733, 739-740 (1985), citando a Rabell v. Alcaides Cárceles de P.R., 104 D.P.R. 96, 101 (1975).
Por lo tanto, es requisito indispensable para la expedición del auto de hábeas corpus, que exista una custodia o detención ilegal del ciudadano a favor de quien se solicita. Es decir, sin una restricción de la libertad que puede catalogarse de ilegal no procede utilizarse el recurso. Pueblo v. Marcano Parrilla, 152 D.P.R. 557, 566 (2000); Santiago Meléndez v. Rodríguez Alguacil, 102 D.P.R. 71, 72 (1974); Díaz v. Campos, 81 D.P.R. 1009, 1015 (1960).
D
Leyes ex post facto
La Constitución de Puerto Rico dispone en su Sección 12 Artículo II, que no se aprobarán leyes ex post facto. 1 L.P.R.A. Ait. II, Sec. 12. Respecto a los alcances de esta cláusula constitucional, nuestro más alto foro ha expresado que:
“[...] la prohibición constitucional sobre leyes ex post facto sólo cobra virtualidad si conlleva que evidenciariamente se requiera menos prueba que la exigida por la ley al momento de la comisión del delito para castigar al acusado -en las dimensiones constitucionales de la presunción de inocencia, la garantía de que se pruebe la culpabilidad más allá de duda razonable y el derecho a juicio por Jurado, Fernández v. *272 Rivera, Jefe del Presidio, 70 D.P.R. 900, 903 (1950)-, o que “en relación con el delito o sus consecuencias, [se] altere la situación del acusado en forma desfavorable para él”, Pueblo v. Pérez Méndez, 83 D.P.R. 539, 545 (1961), [...].”
Pueblo v. Lebrón González, 113 D.P.R. 81, 96 (1982).
Existen varios criterios para determinar si una ley o reglamento resulta ex post facto en su aplicación, a saber: (1) si considera delictivo y castiga un acto que al ser realizado no era punible; (2) si agrava un delito o lo hace mayor que al momento de ser cometido; (3) si altera las normas de evidencia y exige más prueba o distinta a la exigida por la ley vigente a la fecha de la comisión del delito; y (4) si en relación al delito y sus consecuencias, altera la situación del acusado de manera desfavorable para él. Pueblo v. Álvarez Torres, 127 D.P.R. 830, 839-840, nota 5 (1991); Pueblo v. Pérez Méndez, 83 D.P.R. 539, 545 (1961). (Casos citados.)
Por último, pero no menos importante, se ha reconocido que la declaración de retroactividad o prospectividad de una norma jurisprudencial depende de: (1) el propósito que persigue la nueva norma y si aplicarse retroactivamente lo adelanta; (2) la confianza que se le dio a la “antigua norma”; y (3) el efecto de la nueva regla en la administración de la justicia. Véase, Quiles Rodríguez, Supte. Policía, 139 D.P.R. 272, 277 (1995); Pueblo v. Cruz Jiménez, 99 D.P.R. 565, 568 (1971).
E
Alcance de la revisión judicial
En nuestra función apelativa, se impone la doctrina de deferencia la cual nos exige el no intervenir con las determinaciones de los foros de instancia, salvo que haya mediado pasión, prejuicio, parcialidad o error manifiesto de derecho. López Delgado v. Cañizares, opinión de 5 de octubre de 2004, 2004 J.T.S. 165, pág. 299; Belk v. Martínez, 146 D.P.R. 215, 232 (1998). Véase, además, Sec. del Trabajo v. Puig & Abraham, Inc., opinión de 11 de diciembre de 2002, 2002 J.T.S. 156, pág. 345.
En Estados Unidos, tanto los tribunales federales como estatales consistentemente han reconocido que las autoridades carcelarias poseen amplia discreción para adoptar e implementar las disposiciones reglamentarias necesarias para la consecución del interés del estado en la rehabilitación de los confinados y en mantener la seguridad institucional y general. Rhodes v. Chapman, 425 U.S. 337 (1981); Bell v. Wolfish, 441 U.S. 540 (1979). Es en virtud de esta gran discreción, que las autoridades correccionales gozan de gran deferencia por parte de los tribunales, cuando la parte alegadamente afectada pretende revisar judicialmente sus actuaciones. Ramírez v. Depto. de Salud, 147 D.P.R. 901 (1999); Cruz Negrón v. Administración de Corrección, opinión de 28 de marzo de 2005, 2005 J.T.S. 39, pág. 942.
Ahora bien, es deber del tribunal el interpretar las leyes en el contorno de la situación social y económica vigente, para resolver controversias humanas de profundas implicaciones personales para los afectados y para la comunidad en general. Con tal propósito, se debe evitar un resultado “absurdo o irrazonable” al aplicar y ejecutar el texto de una ley conforme a la intención legislativa. Pacheco v. Vargas Alcaide, 120 D.P.R. 404, 409 (1988); Pueblo v. Zayas Rodríguez, 147 D.P.R. 530, 548 (1999).
IV
Aplicación de la norma jurídica
Conforme a la norma jurídica antes expuesta, para que proceda la expedición del recurso de habeas corpus, es necesario que exista una custodia o detención ilegal del ciudadano a favor de quien se solicita. Para determinar si procedía la expedición de tal recurso en el caso ante nos, es necesario dilucidar la legalidad de la custodia de los convictos apelados por parte del Estado.
*273 Según surge de los hechos, los días 6 y 7 de abril de 2005, los convictos apelados fueron reingresados a la Institución Correccional de Bayamón 501. Al momento de ser reingresados, éstos se encontraban cumpliendo sus sentencias por asesinato y otros delitos graves bajo el Programa de Supervisión Electrónica y disfrutando libertad condicionada.
Debemos resaltar que al momento de ocurrir los hechos delictivos de los convictos apelados entre los años 1978 a 1991, no existía aún el privilegio del Programa de Supervisión Electrónica. No fue sino hasta el año 1994, que se adoptó el primer Reglamento Estableciendo el Programa de Supervisión Electrónica. Véase, el Artículo VI(E) et seq., del Reglamento Núm. 5065, supra. En dicho reglamento no se incluyó el asesinato como uno de los delitos que no podía recibir el beneficio de supervisión electrónica. Sin embargo, dicho Artículo VI (E) sólo estuvo vigente desde el 28 de febrero de 1994 hasta el 26 de mayo de 1995, fecha en que fue enmendado por la Ley Núm. 49, supra. Por lo cual, tal privilegio no era aplicable a ninguno de los convictos apelados, pues al momento de éstos solicitar tal privilegio el delito de asesinato era uno de los que estaba expresamente excluido para el programa de supervisión electrónica.
En particular, a cada uno de los apelados convictos se le concedió el privilegio de supervisión electrónica y a continuación así los enumeramos: a Efraín González Fuentes, se le concedió el privilegio de supervisión electrónica el 15 de noviembre de 2002; a José M. Urbina Pérez, el 4 de julio de 2002; a Ricardo Marrero Vázquez, el 17 de noviembre de 2000; a Benjamín Alers Rodríguez el 26 de noviembre de 2002; a Héctor L. Quiñones Andino, el 20 de noviembre de 2001; a Melvin Suárez Fernández, el 24 de noviembre de 2003; y a Edgardo Rivera Borrero, el 16 de septiembre de 2002.
Por su parte, Rafael Rivera Pérez ingresó al programa de supervisión electrónica el 22 de agosto de 2002; Arsenio Sánchez Rodríguez fue referido a tal programa el 20 de agosto de 2002; Andrés Candelario Agosto, ingresó al programa el 28 de junio de 2000; Jorge L. De Jesús Rivera, ingresó el 26 de junio de 2000; José R. Rivera Toxxes, fue referido al programa de supervisión electrónica, el 18 de diciembre de 2002; Julio Alberto Medina Medina, ingresó el 1 de agosto de 2001; y Carlos Delgado Rivera, ingresó al programa de supervisión electrónica el 16 de septiembre de 2002.
A tenor con la Ley Núm. 49, supra, la Administración de Corrección no podía conceder el beneficio de supervisión electrónica a convictos que se encontraran cumpliendo sentencia por el delito de asesinato. Además, según el Reglamento Núm. 6041, el cual estaba vigente al momento de conceder tal beneficio a los apelados, se excluia expresamente de tal privilegio a “las personas que están cumpliendo por [...] Asesinato ‘en primer grado’. [...]”. Véase, artículo VII del Reglamento Núm. 6041, supra.
La Ley Núm. 49, supra, entró en vigor inmediatamente después de su aprobación, es decir, el 26 de mayo de 1995. El legislador determinó que las disposiciones de tal ley, “aplicarán a todos los convictos cumpliendo sentencia bajo la custodia y supervisión de la Administración de Corrección”, a partir de su aprobación. Ley Núm. 49, supra, Artículo 4. Véase, además, orden administrativa Núm. A-C-2001-12, del Administrador de Corrección. Por lo tanto, a aquellos convictos bajo custodia de la Administración de Corrección, le aplicaba la Ley Núm. 49, supra, según sus términos y condiciones, a partir del 26 mayo de 1995.
Sin embargo, la Administración de Corrección, por un alegado error administrativo, concedió ilegalmente tal privilegio a los apelados convictos para los años 2000 al 2003. Dicho error no creó estado de derecho alguno a favor de los apelados convictos y sólo da lugar a su corrección. Por tal razón, a principios del año en curso, el Estado, tras haberse percatado de su error, reingresó a los convictos apelados a la institución carcelaria.
Contrario a lo alegado por los convictos apelados, su detención y reingreso a la institución penal es legal y válida, ya que no les cobija ningún privilegio de libertad condicionada a supervisión electrónica bajo la Ley Núm. 49, supra y el Reglamento Núm. 6041, supra. Los convictos apelados no eran acreedores a ningún *274 privilegio sobre libertad condicionada bajo supervisión electrónica que permita a la Administración de Corrección considerarlos como candidatos idóneos para ello. En consecuencia, careciendo de un derecho de libertad sobre el privilegio de la supervisión electrónica, no cabe hablar de una violación al debido proceso de ley. El caso de los convictos apelados no es uno donde se agravaran los delitos o las penas impuestas al aplicarse el reglamento, se alteraran las normas de derecho probatorio o las consecuencias en la ejecución de las sentencias dictadas, las cuales son finales y firmes, criterios que se imponen sobre la ejecución de leyes ex post facto.
En fin, además de no existir el beneficio reclamado por los convictos apelados al momento de los hechos delictivos, el Reglamento Núm. 6041, supra, vigente al momento de haberle concedido el privilegio de supervisión electrónica a los apelados, tampoco lo concedía. Por lo cual, nuestra obligación al interpretar la ley y el reglamento es imprimirle efectividad a la intención legislativa. En nuestra función revisora de interpretar la ley, no hay cabida para preferencias personales sobre las bondades o defectos de una ley o reglamento; ante su clara expresión, lo que se impone es su ejecución.
Por último, cabe señalar que el caso Núm. KLRA-96-00062, en el cual alegadamente el Procurador General se allanó a la solicitud del recurrente, admitiendo que “la aplicación retroactiva de la Ley Núm. 49 al recurrente sería inconstitucional”, es distinguible del caso ante nos. Como bien reconoció el tribunal de instancia en su sentencia, “el peticionario [...] fue procesado junto con otros dos individuos por los delitos de asesinato en segundo grado”. {Véase, Sentencia TPI, pág. 7.) Ante tales circunstancias, es claro que dicho caso, aun si fuera un precedente, no beneficia a los apelados convictos, que fueron sentenciados por delitos de asesinato en primer grado. No existe propósito del legislador de concederle el privilegio de supervisión electrónica a los convictos de asesinato en primer grado para hacer retroactiva dicha norma. No tiene méritos la alegación al respecto.
Conforme las circunstancias esbozadas, no procede la expedición del habeas corpus presentado por los convictos apelados, pues éstos no se encuentran detenidos ni custodiados de manera ilegal. Ninguno de los convictos apelados tiene derecho al privilegio de supervisión electrónica. Sólo procede su reingreso a la institución penal, para que se corrija así, el error administrativo cometido. La ley así lo exige y el orden constitucional lo sustenta.
Concluimos que incidió el tribunal de instancia al expedir el auto de habeas corpus, de los convictos apelados, por lo tanto procede en derecho ser revocado.
V
Por los anteriores fundamentos, se revoca la sentencia de habeas corpus emitida por el Tribunal de Primera Instancia. Se ordena el ingreso de los convictos apelados a cumplir las sentencias dictadas.
Notifíquese inmediatamente por facsímil y por la vía ordinaria.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
Laura M. Vélez Yélez
Secretaria del Tribunal de Apelaciones