Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| THE 20/22 ACT SOCIETY INC.; WILLIAM SMITH; LEWIS HUTCHINS, ARTHUR PETRIE, ROBERT DIAMOND Y WILLIAM BRANUM<br><br>Apelantes<br><br>v.<br><br>DEPARTAMENTO DE DESARROLLO ECONÓMICO Y COMERCIO; HONORABLE MANUEL LABOY EN SU CAPACIDAD OFICIAL COMO SECRETARIO DE DESARROLLO ECONÓMICO Y COMERCIO<br><br>Apelados | KLAN202100555 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil núm.: SJ2020CV03259<br><br>Sobre: Interdicto Permanente y Sentencia Declaratoria |

Panel integrado por su presidenta, la Jueza Birriel Cardona, la Jueza Álvarez Esnard y el Juez Rodríguez Flores[1]

Rodríguez Flores, juez ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de febrero de 2023.

La parte apelante, The 20/22 Act Society, Inc. y varios poseedores de decretos al amparo de la *Ley para Incentivar el traslado de Individuos Inversionistas a Puerto Rico* o el *Código de Incentivos para Puerto Rico,* infra, presentaron este recurso de apelación el 23 de julio de 2021. Solicitan que revoquemos la *Sentencia* emitida el 26 de mayo de 2021, y notificada el 27 de mayo de 2021, por el Tribunal de Primera Instancia (TPI) Sala de San Juan. Mediante el referido dictamen, dicho foro desestimó la demanda sobre interdicto permanente y sentencia declaratoria en la que la parte apelante impugnó la constitucionalidad de la sección

_____
[1] Mediante Orden Administrativa TA-2022-001 el Juez Rodríguez Flores sustituyó al Juez Vázquez Santisteban.

89 de la Ley Núm. 40-2020. Dicha sección impone a los poseedores de los decretos el pago de $5,000.00 al momento de presentar el informe anual ante la Oficina de Exención del Departamento de Desarrollo Económico y Comercio (DDEC).

Con el beneficio de la comparecencia de la parte apelada, DDEC, procedemos a atender el asunto ante nuestra atención.

I.

La corporación apelante, The 20/22 Act Society, Inc. reúne algunos individuos residentes inversionistas[2] (en conjunto, The 20/22 Act Society) que son tenedores de decretos de exoneración contributiva al amparo de la *Ley para Incentivar el Traslado de Individuos Inversionistas en Puerto Rico* (Ley Núm. 22-2012) o el *Código de Incentivos de Puerto Rico* (Ley Núm. 60-2019).[3] El 18 de junio de 2020, instaron una demanda sobre interdicto permanente y sentencia declaratoria en contra del Departamento de Desarrollo Económico y Comercio (DDEC). En ésta, impugnaron la constitucionalidad de la sección 89 de la Ley Núm. 40-2020[4] y solicitaron que se detuviera el cobro de los $5,000.00 que dicha sección exige a los individuos residentes inversionistas por concepto de derechos de presentación del informe anual.

La sección establece que el monto de cinco mil dólares se distribuirá en $300.00 para nutrir un Fondo Especial administrado por el DDEC, y los restantes $4,700.00 para ser depositados en el Fondo General del Gobierno de Puerto Rico. Conforme el párrafo 11

---

[2] Los codemandantes, señores William Smith, Lewis Hutchins, Robert Diamond y William Branum.

[3] La Ley Núm. 22-2012 exime del pago de contribuciones en Puerto Rico el ingreso pasivo devengado por los tenedores del decreto con respecto a sus inversiones. Además, en el caso de las ganancias de capital a largo plazo, exime del pago de contribuciones sobre las ganancias reconocidas, luego de advenir residentes de Puerto Rico y por el periodo que dure la exención contributiva. La Ley Núm. 60-2019 consolidó una multitud de incentivos económicos y contributivos otorgados por el Gobierno de Puerto Rico y, respecto a la Ley 22-2012, estableció una fecha límite para solicitar un decreto de exención contributiva al amparo de dicha ley anterior.

[4] La sección 89 de la Ley Núm. 40-2020 enmendó los apartados (a) y (b) y añadió un apartado (d) en la Sección 6020.10 de la Ley Núm. 60-2019 (Código de Incentivos de Puerto Rico).

de la demanda, antes de la aprobación de la sección 89 de la Ley Núm. 40-2020, no se había exigido pago alguno para presentar el informe anual, ya que los $300.00 implantados por el DDEC tenían fines puramente administrativos.[5] The 20/22 Act Society alegó que la exigencia de $4,700.00 adicionales a la cantidad original pagada por derechos anuales procura la imposición de una contribución y su cobro al momento de rendir el informe anual. Por ello, entiende que la sección 89 de la Ley Núm. 40-2020 violenta la garantía constitucional que prohíbe el menoscabo de las obligaciones contractuales establecida en el Art. II, Sec. 7 de la Constitución del Estado Libre Asociado de Puerto Rico.

El 31 de agosto de 2020, el Gobierno de Puerto Rico, en representación del DDEC, presentó una *Moción de Desestimación,* al amparo de la Regla 10.2 (5) de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2 (5), fundamentada en que la demanda deja de exponer una reclamación que justifique la concesión de algún remedio. Ello, por incumplir con los requisitos necesarios para la expedición de un *injunction* y/o una sentencia declaratoria. A tales efectos, el DDEC planteó que: (1) el daño alegado era económico y cuantificable, por lo cual no era un daño irreparable; (2) la Ley Núm. 40-2020 cumplía con el principio de neutralidad fiscal requerido por la Junta de Supervisión Fiscal, que pretendía que cada alivio contributivo estuviera acompañado de medidas que aumentaran los ingresos o redujeran los gastos en proporción a los alivios; y (3) el pago por la presentación de un informe anual no era un impuesto o contribución - que se impone a base de un porcentaje de ingreso o actividad económica - sino un cargo o una cantidad fija que se establece sobre un grupo particular de personas sujetas a la reglamentación. El DDEC afirmó que, por motivo de no tratarse de

---

[5] Apéndice del recurso, pág. 5.

un impuesto o contribución, el pago establecido en la sección 89 de la Ley Núm. 40-2020 no violenta la cláusula constitucional que prohíbe el menoscabo de las obligaciones contractuales, sino que solamente contempla el aumento del costo de los derechos de presentación del informe anual requerido por ley a los tenedores del decreto.

En la alternativa, el DDEC sostuvo que, de constituir un menoscabo de obligaciones contractuales, se debía sostener la validez constitucional de la modificación, puesto que ésta cumple con el criterio de razonabilidad y es necesaria para adelantar el interés gubernamental de establecer un balance entre las medidas de regulación y recaudo, y los alivios contributivos propuestos por la legislación.

En su *Oposición a Moción de Desestimación,* The 20/22 Act Society arguyó que los decretos concedidos al palio de las mencionadas leyes establecen un contrato entre el Estado y el concesionario del decreto, por lo cual, el pago adicional de $4,700.00 constituye un cambio sustancial que desafía dicho acuerdo, así como una imposición contributiva sobre la propia actividad exenta.

Durante la vista argumentativa del 23 de septiembre de 2020, las partes tuvieron la oportunidad de exponer sus respectivas posiciones en torno a las mociones presentadas ante la consideración del TPI.

El 26 de mayo de 2021, notificada el 27 de mayo de 2021, el TPI dictó la *Sentencia* apelada. En su dictamen, el TPI formuló las siguientes determinaciones de hechos:

1. La *Ley para Incentivar el Traslado de Individuos Inversionistas a Puerto Rico,* Ley Núm. 22 fue aprobada el 17 de enero de 2012.

2. La parte codemandante The 20/22 Act Society Inc. es una corporación doméstica debidamente creada al amparo de las leyes del Estado Libre Asociado de Puerto Rico. La corporación demandante reúne a varios

beneficiarios de decretos contributivos de la Ley Núm. 22-2012, según enmendada, en Puerto Rico.

3. Los demandantes alegan ser tenedores de decretos bajo la Ley Núm. 22-2012.

4. La Ley Núm. 22-2012 exime totalmente del pago de contribuciones en Puerto Rico el ingreso pasivo devengado por los tenedores del decreto con respecto a sus inversiones. Además, en el caso de las ganancias de capital a largo plazo, exime del pago de contribuciones sobre las ganancias reconocidas, luego de advenir residentes de Puerto Rico y por el periodo que dure la exención contributiva. *Véanse* los Arts. 4 y 5 de la Ley Núm. 22-2012, 13 LPRA secs. 10852-53.

5. El Art. 3 (a) de la Ley Núm. 22-2012 establece que "[l]os decretos bajo esta Ley se considerarán un contrato entre el concesionario y el Gobierno de Puerto Rico, y dicho contrato será considerado ley entre las partes". Además, dispone que "[e]l decreto será efectivo durante el periodo de efectividad de los beneficios concedidos en esta Ley, pero nunca luego de 31 de diciembre de 2035, salvo que con anterioridad al vencimiento de dicho período el decreto sea revocado".

6. El Departamento de Desarrollo Económico y Comercio de Puerto Rico fue la agencia encargada, y actualmente sigue siendo, de implementar la Ley Núm. 22-2012 y la encargada de atender, procesar y conceder los decretos de exención contributiva al palio de dicho estatuto.

7. La Ley Núm. 241-2014 enmendó la Ley Núm. 22-2012 para, entre otras cosas, requerirle a los tenedores de decretos bajo dicha ley la presentación de un informe anual y, de esta forma, facilitar la evaluación y fiscalización de los decretos otorgados. *Véase* el Art. 6 de la Ley Núm. 22-2012, 13 LPRA sec. 10854.

8. La presentación de los informes anuales requiere el pago de derechos por presentación.

9. Con el fin de consolidar una multitud de incentivos económicos y contributivos otorgados por el Gobierno de Puerto Rico, el 1 de julio de 2019 se promulgó el Código de Incentivos. Entre otras cosas, el Código de Incentivos enmendó la Ley Núm. 22-2012 a los efectos de establecer la fecha de 31 de diciembre de 2019 como último día para solicitar un decreto de exención contributiva bajo la Ley Núm. 22-2012. *Véase* el Art. 12 de la Ley Núm. 22-2012, según enmendado por la Sección 6070.19 de la Ley Núm. 60-2019. *Véase, además,* la Sección 6070.72 del Código de Incentivos ("toda solicitud de incentivos y beneficios contributivos que esté debidamente presentada y pendiente al 31 de diciembre de 2019 será procesada al amparo de la ley anterior bajo la cual fue presentada").

10. En la sección 1000.04(b) del Código de Incentivos Contributivos de Puerto Rico, se expresa que "[l]os

Decretos de exención contributiva constituyen un contrato entre el Gobierno de Puerto Rico, el Negocio Exento y sus accionistas. Los términos y las condiciones que se acuerden en el contrato se honrarán durante la vigencia del Decreto de exención contributiva sujeto a que el Concesionario esté en cumplimiento con los términos y condiciones del mismo".

11. El 16 de abril de 2020 se aprobó la Ley Núm. 40-2020, la cual enmendó varias secciones del Código de Incentivos. En lo pertinente al caso de epígrafe, la Sección 89 de la Ley Núm. 40-2020 enmendó la Sección 6020.10 del Código de Incentivos para, entre otras cosas, aumentar el costo de los derechos de presentación de los informes anuales requeridos a los tenedores de los decretos por Ley Núm. 22-2012 de trecientos dólares ($300.00) a cinco mil dólares ($5,000.00). El cargo de cinco mil dólares ($5,000.00) asociado a la presentación de informes anuales también aplica a los tenedores de decreto de exención contributiva como Individuo Residente Inversionista bajo el propio Código de Incentivos.[6]

En las conclusiones de derecho, el TPI distinguió la definición de cargo versus impuesto. A continuación, razonó que el pago de $5,000.00 por concepto de derechos de presentación del informe anual exigido a los poseedores de decretos bajo la Ley Núm. 22-2012 es un cargo, porque solamente aplica a un grupo limitado de personas por motivo de estar sujetos a una reglamentación; no un impuesto, porque no se le exige a la ciudadanía en general. En lo concerniente al referido cargo, el TPI añadió que el Artículo 6 de la Ley Núm. 22-2012[7] notificaba a los poseedores de los decretos emitidos a su amparo el requisito de pagar los derechos de presentación del informe anual. Afirmó que dicho artículo también advierte que la cuantía y el proceso de pago estarían sujetos a la discreción del Secretario del DDEC. Por consiguiente, indicó que el poseedor de un decreto ha sido informado de la imposición de un cargo o derecho asociado a la presentación del informe anual al momento de rendir el informe.

---

[6] (Nota al calce omitida). Véase, *Sentencia.* Apéndice del recurso, págs. 103-123.
[7] 13 LPRA sec. 10854.

El TPI puntualizó que la protección de la garantía constitucional que prohíbe el menoscabo de las obligaciones contractuales no es absoluta, ya que debe armonizarse con el poder de reglamentación del Estado en beneficio del interés público. Por ello, indicó que el Tribunal Supremo ha reiterado que no todo menoscabo de una obligación contractual es inconstitucional.

En ese contexto, explicó que, conforme los términos del propio estatuto, los decretos suscritos al palio la Ley Núm. 22-2012 son contratos entre el Estado y una parte privada, por lo cual, éstos se analizan mediante un escrutinio de razonabilidad, en el que se toma en cuenta el interés público promovido y la extensión del menoscabo contractual. Explicó que los decretos de la Ley Núm. 22-2012 no establecen la cuantía específica a pagar por concepto de derechos de presentación del informe anual. Tampoco contienen una prohibición a los efectos de que el Estado no pueda requerir el pago de un cargo o derecho a la presentación del informe anual. Por consiguiente, cualquier modificación al importe del pago para el decreto no afectaba, alteraba o menoscababa las obligaciones contractuales que surgían del decreto.

El TPI precisó que la sección 89 de la Ley Núm. 40-2020 lo que hizo fue fijar en $5,000.00 la cuantía del pago y su desglose. Entonces, evaluó la medida bajo el crisol de la protección constitucional que prohíbe el menoscabo de las obligaciones contractuales, y tras aplicar el escrutinio de razonabilidad, coligió que dicha medida era una razonable que busca adelantar el interés apremiante, legítimo y significativo de regular los beneficios que representan los decretos concedidos al amparo de la Ley Núm. 12-2012, con el fin de lograr la neutralidad fiscal. Consecuentemente, sostuvo la constitucionalidad de la sección 89 de la Ley Núm. 40-2020.

Por lo tanto, concluyó que, aun tomando como ciertos los hechos de la demanda e interpretarlos de la manera más favorable a The 20-22 Act Society, no era posible conceder remedio alguno. Así pues, determinó que no procedía expedir el *injunction* solicitado para impedir el cobro del cargo de $5,000.00. En virtud de ello, desestimó la demanda por dejar de exponer una reclamación que justificara la concesión de un remedio.

Inconforme con dicha determinación, el 23 de julio de 2021, The 20/22 Act Society incoó la presente apelación, en la que indica que el foro sentenciador incurrió en los siguientes señalamientos de error:

1. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA (TPI) AL DESESTIMAR LA DEMANDA DE MARRAS CUANDO AL DAR POR CIERTAS LAS ALEGACIONES FÁCTICAS BIEN FORMULADAS SE ADUJO UNA CAUSA DE ACCIÓN VÁLIDA DE VIOLACIÓN A LA CLÁUSULA DE MENOSCABO DE OBLIGACIONES CONTRACTUALES BAJO LA CONSTITUCIÓN FEDERAL Y LA DE PUERTO RICO.

2. ERRÓ EL TPI AL APLICAR UN ESTÁNDAR ADJUDICATIVO FORÁNEO A LAS MOCIONES DE DESESTIMACIÓN.

3. ERRÓ EL TPI AL DESESTIMAR LA DEMANDA DE AUTOS Y RESOLVER COMO CUESTIÓN DE HECHO Y DERECHO QUE EXISTÍA UNA JUSTIFICACIÓN PARA LA APROBACIÓN DE LA LEGISLACIÓN IMPUGNADA E INCIDIR SOBRE LAS OBLIGACIONES CONTRACTUALES ENTRE EL ESTADO Y LOS DEMANDANTES.

4. ERRÓ EL HONORABLE FORO *A QUO* AL RESOLVER QUE NO SE VIOLENTÓ LA CLÁUSULA DE MENOSCABO DE OBLIGACIONES CONTRACTUALES CON LA IMPOSICIÓN DE UN CARGO A TODO POSEEDOR DE UN DECRETO BAJO LAS LEYES NÚMS. 20-2012 Y 22-2012.

5. ERRÓ EL TPI AL RESOLVER QUE LA IMPOSICIÓN ECONÓMICA DE LA LEY NÚM. 40-2020 ES UNA CUOTA Y NO UNA CONTRIBUCIÓN.

6. ERRÓ EL TPI AL RESOLVER QUE NO PROCEDE LA EXPEDICIÓN DE UN INTERDICTO PERMANENTE.

El 2 de septiembre de 2021, el DDEC presentó un *Escrito en Cumplimiento de Resolución,* en el que expuso las razones por las cuales debemos confirmar el dictamen apelado.

Luego de revisar los escritos de las partes y los documentos que obran en el expediente, estamos en posición de resolver.

**II.**

**A. Ley Núm. 22-2012**

La Ley Núm. 22-2012, conocida como la *Ley para Incentivar el Traslado de Individuos Inversionistas a Puerto Rico,* 13 LPRA sec. 10851 *et seq.,* fue creada a los fines de conceder exención contributiva con respecto al ingreso, producto de inversiones, devengado por individuos que advengan residentes de Puerto Rico, no más tarde del año que finaliza el 31 de diciembre de 2035.[8] El referido estatuto define "Individuo Residente Inversionista" como:

> un individuo residente, según se define en la Sección 1010.01(a)(30) del Código, que no haya sido residente de Puerto Rico durante los últimos quince (15) años anteriores a la fecha de vigencia de esta ley y que advenga residente de Puerto Rico no más tarde del año contributivo que finaliza el 31 de diciembre de 2035.[9]

A su vez, dispone que "[l]os decretos bajo esta Ley se considerarán un contrato entre el concesionario y el Gobierno de Puerto Rico, y dicho contrato será considerado ley entre las partes.".[10]

En lo que atañe a las cuestiones planteadas ante nuestra consideración, el Art. 6 de Ley Núm. 22-2012, 13 LPRA sec. 10854, establece que:

---

[8] Exposición de Motivos de la *Ley para Incentivar el Traslado de Individuos Inversionistas a Puerto Rico,* Ley Núm. 22-2012, 13 LPRA sec. 10851.
[9] *Íd.,* Art. 2 (13 LPRA sec. 10851).
[10] *Íd.*

> Todo Individuo Residente Inversionista que posea un decreto concedido bajo esta Ley, radicará anualmente un informe autenticado, en la Oficina de Exención, con copia al Secretario de Hacienda, treinta (30) días luego de haber radicado la planilla de contribución sobre ingresos ante el Departamento de Hacienda, incluyendo cualquier prórroga.
>
> . . . . . . . .
>
> Los derechos serán pagados mediante la forma que establezca el Secretario.[11]

### B. Ley Núm. 60-2019

La Ley Núm. 60-2019, conocida como el *Código de Incentivos de Puerto Rico*, 13 LPRA sec. 45001 *et seq.*, (en adelante Código de Incentivos) fue promulgada con el propósito de promover actividades para fomentar el crecimiento de la economía de Puerto Rico a través de la inversión, la exportación y la creación de empleos.[12] Particularmente, la sección 1020.01(a)(20) dispone que el concepto "**Decreto**" se entenderá de la siguiente manera:

> Significa la concesión, mediante contrato, que emita el Secretario del DDEC permitiendo a un Negocio Elegible, gozar de los incentivos y/o créditos contributivos correspondientes a dicho Negocio Elegible, sujeto a que cumplan con los requisitos y la reglamentación aplicable, ya sea bajo este Código o Leyes de Incentivos Anteriores.[13]

Asimismo, la precitada sección, en el sub-inciso 43, provee un amplio listado de todos los estatutos que estarán comprendidos dentro de la frase "Leyes de Incentivos Anteriores". Uno de estos estatutos es la Ley Núm. 22-2012, según enmendada, *supra*.[14]

Posteriormente, la Asamblea Legislativa aprueba la Ley 40-2020. Mediante la Sección 89 de esta Ley fue enmendada la Sección 6020.10 del Código de Incentivos, para establecer, en lo pertinente, lo siguiente:

> (d) La radicación de los informes anuales requeridos para Negocios Exentos bajo la Sección 2021.01 de este Código, o bajo la Ley 22-2012, según enmendada, conocida como la "Ley Para Incentivar el Traslado de Individuos Inversionistas a Puerto

---

[11] *Íd.*, Art. 6 (13 LPRA sec. 10854).
[12] Véase: Exposición de Motivos, *Código de Incentivos de Puerto Rico*, Ley Núm. 60-2019, 13 LPRA sec. 45001.
[13] 13 LPRA sec.45012(a)(20).
[14] 13 LPRA Sec. 45012 (a)(43).

Rico", **estará sujeta a un cargo anual de cinco mil (5,000) dólares, de los cuales trescientos (300) dólares serán pagaderos a favor del Secretario de Hacienda y nutrirán un Fondo Especial administrado por el DDEC, y cuatro mil setecientos (4,700) dólares serán pagaderos a favor del Secretario de Hacienda** que serán destinados al Fondo General del Gobierno de Puerto Rico.[15]

### C. Menoscabo de Obligaciones Contractuales

El Artículo II, Sección 7, de la Constitución del Estado Libre Asociado de Puerto Rico, prohíbe la aprobación de leyes que menoscaben las obligaciones contractuales.[16] Dicha garantía constitucional limita la intervención del gobierno con las obligaciones contractuales entre partes privadas y las contraídas por el Estado. Su propósito es asegurar la estabilidad de las relaciones contractuales. Ahora bien, su protección no es absoluta, ya que la misma debe ser armonizada con el poder de reglamentación del Estado en beneficio del interés público.[17]

Nuestro Tribunal ha expresado reiteradamente que no todo menoscabo de una obligación contractual es contrario a la Constitución.[18] El análisis de esta cláusula constitucional depende de si el contrato que se modifica es entre entes privados o es uno en el que el Estado es parte.

Los contratos privados se analizan mediante un escrutinio de razonabilidad en el que se toma en cuenta cuán sustancial es el interés público promovido y la extensión del menoscabo contractual.[19] El primer paso es determinar si existe una relación contractual, y si su modificación representa un menoscabo sustancial o severo.[20] Si se determina que existe un menoscabo

---

[15] 13 LPRA secc. 48530 (Énfasis suplido).

[16] 1 LPRA Art. 2, Sec. 7.

[17] *Domínguez Castro v. E.L.A. 178 DPR 1, 79-85. (2010); AMPR v. Sist. Retiro-Maestros IV,* 190 DPR 854, 868-871 (2014); *Con. Tit. Acquamarina, et al. v. Triple-S,* 210 DPR ___ (2022), 2022 TSPR 103, 11-12; *Aut. Puertos PR v. Total Petroleum et al.,* 210 DPR ___, (2022), 2022 TSPR 89, 6-7.

[18] *Íd.*

[19] *Íd.*

[20] *Íd.*

severo, entonces es necesario evaluar, si la intervención gubernamental responde a un interés legítimo y si está racionalmente relacionada con la consecución de ese objetivo.[21]

Un escrutinio más cuidadoso es aplicado cuando el Estado es parte de la relación contractual, debido a que podría actuar para su propio beneficio.[22] Al evaluar la necesidad y razonabilidad de una ley, procede conferir alguna deferencia al criterio de la Asamblea Legislativa.[23] A mayor severidad del menoscabo, mayor rigor debe tener el foro judicial en el análisis de la legislación impugnada.[24] No obstante, la validez será sostenida, si el menoscabo surge como consecuencia de una modificación razonable y necesaria dirigida a adelantar un interés público.[25]

Particularmente, en *Domínguez Castro et al. v. ELA*, 178 DPR 1, (2010), nuestro más alto foro logró un análisis abarcador de la doctrina vigente en materia de menoscabo de obligaciones contractuales, y nos señaló que:

> [A]l auscultar la validez de una ley a la luz de la cláusula de menoscabo de obligaciones contractuales el criterio aplicable es el de razonabilidad.
> . . . . . . . .
> Por tanto, la función del foro judicial al evaluar la validez de una legislación según la cláusula del menoscabo de obligaciones contractuales consiste en establecer un balance entre el poder del Estado ("police power") para salvaguardar el bienestar y la seguridad de la ciudadanía y el interés de proteger las relaciones contractuales.[26]

Por consiguiente, al auscultar la validez de una ley a la luz de la cláusula de menoscabo de obligaciones contractuales el criterio aplicable es el de razonabilidad. La razonabilidad de la legislación se

---

[21] *Íd.*
[22] *Íd.*
[23] *Íd.*
[24] *Íd.*
[25] *Íd.*
[26] *Domínguez Castro v. E.L.A.*, supra, pág.81.

determinará tomando en consideración la sustancialidad del interés público promovido y la dimensión del menoscabo ocasionado.[27]

Por lo tanto, la cláusula constitucional contra el menoscabo de obligaciones contractuales se activa "cuando la modificación **afecta los términos o condiciones esenciales del contrato** que principalmente dieron motivo a la celebración de éste **de modo que frustren las expectativas razonables de las partes**".[28]

### D. Moción de Desestimación

La Regla 10.2 de Procedimiento Civil establece que previo a realizar una alegación responsiva es permitido que el demandado presente una moción de desestimación.[29] La precitada regla dispone que tal solicitud deberá ser presentada en una moción debidamente fundamentada en alguna de las siguientes defensas:

> (1) falta de jurisdicción sobre la materia;
> (2) falta de jurisdicción sobre la persona;
> (3) insuficiencia en el emplazamiento;
> (4) insuficiencia del diligenciamiento;
> (5) **dejar de exponer una reclamación que justifique la concesión de un remedio**;
> (6) dejar de acumular una parte indispensable.[30]

Nuestro más alto foro ha intimado que, al considerar una moción de desestimación, las alegaciones contenidas en la demanda deberán interpretarse en conjunto y de la manera más favorable para el demandante.[31] De ahí que, al evaluar una moción al amparo del inciso cinco antes mencionado, "el tribunal tomará como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara, concluyente y que de su faz no den margen a dudas".[32]

Por ello, le corresponde al tribunal auscultar bajo un análisis de favorabilidad hacia el demandante, si la demanda contiene

---

[27] *Íd.*
[28] *Íd.,* pág. 83. (Énfasis suplido).
[29] *Conde Cruz v. Resto Rodríguez,* 205 DPR 1043 (2020).
[30] 32 LPRA Ap. V, R. 10.2. (Énfasis nuestro).
[31] *Rivera v. Jaume,* 157 DPR 562, 584 (2002).
[32] *Aut. Tierras v. Moreno & Ruiz Dev. Corp.,* 174 DPR 409, 428 (2008).

alegaciones suficientes para formar una reclamación válida.[33] Dicho de otro modo, no procederá desestimar la demanda, salvo que, aun concediendo toda duda a favor del demandante este no tiene derecho a remedio alguno, bajo los hechos que pueda probar.[34]

### E. Injunction Permanente

El *injunction* es un mandamiento judicial reglamentado por la Regla 57 de Procedimiento Civil, 32 LPRA Ap. V, R. 57, y por los Arts. 675 al 687 del Código de Enjuiciamiento Civil, 32 LPRA secs. 3521-3533. Éste "pretende prohibir u ordenar la ejecución de un acto, para evitar que se causen perjuicios inminentes o daños irreparables a alguna persona, cuando no hay otro remedio en ley adecuado."[35]

Como se sabe, la Regla 57 de Procedimiento Civil, *supra*, contempla tres tipos de *injunction*, a saber: el entredicho provisional, el *injunction* preliminar y el *injunction* permanente. Con respecto a los criterios a ponderar en atención al injunction permanente, nuestro Tribunal ha establecido los siguientes: (1) si el demandante ha prevalecido en un juicio en sus méritos; **(2) si el demandante posee algún remedio adecuado en ley**; (3) el interés público implicado; y (4) el balance de equidades.[36] Entiéndase que, la concesión o denegación de un injunction precisa que **su promovente** demuestre la existencia de un daño irreparable y la ausencia de un remedio adecuado en ley para atenderlo.[37]

Sin embargo, el Código de Enjuiciamiento Civil dispone que el recurso extraordinario de *injunction* no se podrá utilizar para impedir los efectos de una ley que es constitucionalmente válida. Es

---

[33] *Íd.*
[34] Véase: *Consejo de Titulares v. Gómez Estremera et al.*, 184 DPR 407, 423 (2012); *Torres v. Torres et al.*, 179 DPR 481, 502 (2010); *Pressure Vessels PR v. Empire Gas PR*, 137 DPR 497, 505 (1994).
[35] *Mun. Fajardo v. Srio. Justicia et al.,* 187 DPR 245, 255 (2012).
[36] *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, *supra*, pág. 428.
[37] *Asoc. Vec. v. Caparra v. Asoc. Fom. Educ.,* 173 DPR 304, 319-320 (2008). (Énfasis suplido).

decir, como norma general, el remedio extraordinario del *injunction* no puede concederse para impedir la aplicación u observancia de cualquier ley de la Asamblea Legislativa de Puerto Rico, o para impedir el cumplimento de cualquier actuación autorizada por ley de la Asamblea Legislativa de Puerto Rico, de un funcionario público, de una corporación pública, o de una agencia pública, o de cualquier empleado o funcionario de dicha corporación o agencia, a menos que se hubiera determinado por sentencia final, firme inapelable e irrevisable que dicha ley o actuación autorizada por ley es inconstitucional o inválida.[38]

La concesión del remedio descansará en la sana discreción judicial, que se ejercerá al considerar tanto los intereses como las necesidades de las partes involucradas en el caso. Este debe expedirse con mesura y únicamente ante una demostración de clara e inequívoca violación de un derecho. En atención a ello, la determinación del tribunal no se revocará en apelación, a menos que se demuestre que el foro abusó de su facultad.[39]

### III.

The 20/22 Act Society solicita que revisemos la *Sentencia* apelada, alegando que erró el foro primario al desestimar la demanda aun cuando existía una causa de acción válida de violación a la cláusula de menoscabo de obligaciones contractuales[40]; al establecer que había justificación para aprobar la legislación que impugna, debido a que incide en la obligación contractual entre las partes[41]; y al disponer que la imposición económica de la Ley Núm. 40-2020 es un cargo y no una contribución o impuesto.[42]

---

[38] Art. 678 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3254.
[39] *Next Step Medical Co. v. Bromedicon, Inc.,* supra, pág. 487.
[40] Alegato del apelante, pág. 7-10.
[41] *Íd.*
[42] *Íd.,* pág. 16-18.

En específico, arguye que, previo a la aprobación de la Ley Núm. 40-2020, *supra*, a ninguno de los concesionarios de los decretos bajo la Ley Núm. 22-2012, *supra*, se le había impuesto una contribución por la mera tenencia del decreto.[43] Detalla que, el pago de los trescientos dólares ($300.00) anuales era para fines administrativos de manejo de informes anuales. Entiende que la diferencia de los cuatro mil setecientos dólares ($4,700) es una contribución que se impone sobre la existencia del mismo decreto, pues condiciona su vigencia a que se realice el pago, por lo cual, si la contribución no se paga, el decreto pierde vigencia.[44] A su juicio, lo anterior constituye un cambio sustancial a su relación contractual con el Estado.[45] Por consiguiente, sostiene que la sección 89 de la Ley Núm. 40-2020 menoscaba la obligación contractual entre partes. Así, indica que el TPI debió, al menos, expedir un *injunction* preliminar para vindicar sus derechos constitucionales y no descartar las alegaciones sin celebrar una vista en la que el DDEC demostrara el interés legítimo que justifica la interferencia con derechos constitucionales protegidos.[46]

El DDEC, en cambio, sostiene que las alegaciones de The 20/22 Act Society se apoyan en alegaciones conclusorias e insuficientes para mantener viva una reclamación al amparo de la garantía constitucional que prohíbe el menoscabo de obligaciones contractuales.[47] En particular, expuso que The 20/22 Act Society no rebatió el hecho de que los informes anuales son un mecanismo de fiscalización que se ejerce a la luz de la política pública de desarrollo económico.[48] Dada la ausencia de posibilidades de prevalecer en el reclamo de inconstitucionalidad, y en vista de que

---

[43] *Íd.*, pág. 17.
[44] *Íd.*
[45] *Íd.,* pág. 14.
[46] *Íd.*, págs. 22-23.
[47] Alegato del apelado, págs. 17-23.
[48] *Íd.,* pág. 23.

el recurso de *injuction* no puede utilizarse para paralizar la ejecución de una ley que no ha sido declarada inconstitucional, el DDEC señala que el TPI actuó correctamente al denegar la expedición del remedio extraordinario.[49]

Surge de la *Sentencia* apelada que el TPI evaluó si el cargo anual de $5,000.00 del apartado (d) de la sección 89 de la Ley Núm.40-2020 constituye un impuesto o contribución y si éste menoscabó el acuerdo entre los tenedores de decretos al palio de la Ley Núm. 22-2012 y el Estado. El TPI resolvió que el cargo anual de $5,000,00 no es un impuesto y, a su vez, que el importe a pagarse no forma parte de los decretos bajo la Ley Núm. 22-2012. Por tanto, descartó la interpretación de que la aprobación de la aludida sección 89 menoscabó la obligación contractual entre las partes en disputa, sostuvo la constitucionalidad de la sección 89 de la Ley Núm. 40-2020 y denegó expedir el *injunction* solicitado. Coincidimos con tal apreciación.

La sección 89 de la Ley Núm. 40-2020 estableció el cargo de $5,000.00 a los negocios exentos con decretos vigentes bajo la Ley Núm. 22-2012 y cualquiera que se haya otorgado o se otorgue a individuos residentes inversionistas bajo el Código de Incentivos. Este cargo a dichos decretos es adicional al requisito de aportación anual mínima que deben realizar al momento de radicar su informe anual bajo la Sección 6020.10 (b) del Código de Incentivos.

El referido cargo de $5,000.00 es un cargo o derecho *(fee)*. El Tribunal Supremo de Puerto Rico ha resuelto que una contribución no es equivalente a un derecho. *Esso Standard Oil v. A.P.P.R.*, 95 DPR 772, 785-786 (1968). Las contribuciones se imponen contra las ganancias netas con el propósito de generar rentas para atender la función de la cosa pública en general, de cada cual conforme a su

---

[49] *Íd.,* págs. 24-25.

capacidad y a cada cual conforme a su necesidad; mientras que un cargo o derecho (*fee*) tiene como finalidad producir ingresos específicos en función de una actividad específica, con propósito principal de restituir recursos. *Íd.* Además, el cargo solamente aplica a un grupo limitado de personas por motivo de estar sujetos a una reglamentación; no se le exige a la ciudadanía en general.

Por otro lado, el Artículo 6 de la Ley Núm. 22-2012[50] notifica a los poseedores de los decretos emitidos a su amparo el requisito de pagar los derechos de presentación del informe anual. El mencionado artículo también advierte que la cuantía y el proceso de pago estarían sujetos a la discreción del Secretario del DDEC. De tal forma, el poseedor de un decreto tiene conocimiento de la imposición de un cargo o derecho asociado a la presentación del informe anual al momento de rendir el informe.

Ahora bien, el decreto suscrito bajo la Ley Núm. 22-2012 no especifica la cuantía a pagar por concepto de derechos de presentación del informe anual. Es la sección 89 de la Ley Núm. 40-2020 la que estableció el importe que corresponde pagar a los individuos residentes inversionistas por derechos de presentación del informe anual. Este cambio no menoscabó el contrato de decreto entre los concesionarios y el DDEC, puesto que el decreto continúa íntegro. Aun así, tras igualmente evaluar la referida sección a la luz de la garantía constitucional que prohíbe el menoscabo de las obligaciones contractuales, concluimos que ésta es razonable y adelanta el interés apremiante y legítimo de regular los beneficios que representan los decretos concedidos al amparo de la Ley Núm. 12-2012, con el propósito de lograr la neutralidad fiscal. Así pues, el cargo de $5,000.00 no resulta desproporcional al considerar los

---

[50] 13 LPRA sec. 10854.

beneficios contributivos que representan los decretos de la Ley Núm. 22-2012.

Como se ha dicho, cuando se trata de cuestionar la validez constitucional de una ley bajo la cláusula del menoscabo de obligaciones contractuales, y una de las partes sea el Gobierno, hemos reiterado que "se aplica un escrutinio más cuidadoso" y se le debe dar deferencia a la Asamblea Legislativa respecto a la necesidad y razonabilidad de la medida.

El cargo que establece la enmienda no constituye un menoscabo a la obligación contractual de los decretos de la ley Núm. 22-2012, toda vez que éste no afecta los términos o condiciones esenciales de dichos acuerdos. La enmienda establecida por la Ley Núm. 40-2020 es similar a la enmienda que efectúa la Asamblea Legislativa en su ejercicio de poder de Estado bajo la Ley Núm. 241-2014, que enmendó la Ley Núm. 22-2012 para requerirle a los tenedores de decretos bajo dicha ley la presentación de un informe anual y, de esta forma, facilitar la evaluación y fiscalización de los decretos otorgados. Ello, sin alterar lo establecido por escrito en los decretos entre las partes. Asimismo, colegimos que la medida en controversia es razonable y necesaria para adelantar el interés público de lograr la neutralidad fiscal.

En fin, al igual que el foro apelado, sostenemos la constitucionalidad de la sección 89 de la Ley Núm. 40-2020. A la par, y tras evaluar las alegaciones de la demanda de la manera más favorable a The 20/22 Act Society, colegimos que no procedía expedir el *injunction* solicitado para impedir el cobro del cargo de $5,000.00 que la referida sección exige a los poseedores de decretos al palio de la Ley Núm. 22-2012 o la Ley Núm. 60-2019. Consecuentemente, concluimos que no erró el TPI al emitir su dictamen y desestimar la demanda al amparo de la Regla 10.2 de

Procedimiento Civil, *supra.* Así pues, procede confirmar la *Sentencia* apelada.

**IV**.

Por los fundamentos antes expuestos, confirmamos la Sentencia apelada.

Notifíquese.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones